The Atlantic National Bank of Boston *vs.* Hupp Motor Car Corporation & others.

Suffolk.    May 13, 14, 1937. — September 16, 1937.

Present: Rugg, C.J., Crosby, Donahue, Lummus, & Qua, JJ.

*Jurisdiction*, Foreign corporation, Nonresident defendant, Objection to jurisdiction. *Corporation*, Foreign, Officers and agents. *Agency*, What constitutes. *Interstate Commerce*.

An officer's return showing service upon a foreign corporation by service "in hand to" a named person "its district manager, and the person in charge of its business," showed proper service upon the defendant's

---

* The plaintiff requested and the judge gave the following ruling: "That there has been no evidence submitted that would warrant a finding that the plaintiff was guilty of contributory negligence." — Reporter.

agent in charge of its business, and was sufficient in form under G. L. (Ter. Ed.) c. 223, §§ 38, 37.

A foreign corporation was entitled to have its contention, raised by a plea to the jurisdiction, that at the time of alleged service of process it was not doing business here and was not present nor "found in" this Commonwealth, examined and determined on the facts, and as to such jurisdictional matter it was not bound by statements in the officer's return.

A foreign corporation, engaged elsewhere in the manufacture and sale of motor cars, was engaged in business in this Commonwealth and subject to service of process within the meaning of G. L. (Ter. Ed.) c. 223, § 38, by having an agent in residence here take over temporarily the activities of its independent local distributor upon his withdrawal from business and in so doing conduct transactions which partook of the character of a course of dealing here at the time of service.

An agent of a foreign corporation might be found actually to have been in "charge of its business" here and qualified to receive service of process under G. L. (Ter. Ed.) c. 223, §§ 38, 37, though at the moment of service a nonresident superior of his was here temporarily.

It was not an unreasonable burden upon interstate commerce to require a foreign corporation, carrying on business temporarily in this Commonwealth, to answer to a suit brought here by a resident and arising out of transactions which took place here.

BILL IN EQUITY, filed in the Superior Court on April 11, 1935, with a trustee writ dated April 10, 1935.

A plea in abatement was overruled by interlocutory decree entered on January 8, 1937, by order of *Greenhalge*, J., who reported his ruling for determination by this court.

*J. T. Noonan*, for the defendant Hupp Motor Car Corporation.

*S. C. Rand*, (*M. Jenckes* with him,) for the plaintiff.

QUA, J. The defendant Hupp Motor Car Corporation, a foreign corporation, hereinafter referred to as the defendant, pleads in abatement to the jurisdiction of the court on the grounds both that the officer's return is insufficient on its face to establish service upon the defendant and that in fact no valid service was made.

One return upon the subpoena shows service upon the defendant on December 3, 1935, "in hand to A. D. Chantler, its District manager, and the person in charge of its business." By G. L. (Ter. Ed.) c. 223, §§ 37, 38, service upon a foreign corporation which is permanently or temporarily engaged in business in this Commonwealth may be made

upon its "president, treasurer, clerk, cashier, secretary, agent or other officer in charge of its. business." The defendant contends that the return fails to disclose service upon either an officer or an agent "in charge of its business," citing *United Drug Co.* v. *Cordley & Hayes*, 239 Mass. 334, and *Zani* v. *Phandor Co.* 281 Mass. 139. Although a "District manager" may not be an officer in the ordinary sense of the word, it is difficult to see how any manager or employee of a corporation in charge of its business can be other than its agent. If there can be cases where he is not its agent they are too few in number and too peculiar in character to deprive the words used in this return of their natural signification. We think that the return, fairly construed, shows service upon the agent in charge of the defendant's business, and that it is sufficient in form.

But the defendant further insists that on December 3, 1935, it was not doing business within this Commonwealth and that it was not present or "found in" the Commonwealth and therefore that it was not in any event answerable to service or to suit here. As a nonresident it is entitled under general principles of comity as well as under the due process clause of the Federal Constitution to have this question examined and determined on the facts, and as to such a jurisdictional matter it is not bound by statements in the return, however correct in form the return may be. *Bay State Wholesale Drug Co.* v. *Whitman*, 280 Mass. 188. *Reynolds* v. *Missouri, Kansas & Texas Railway*, 224 Mass. 379. *Thurman* v. *Chicago, Milwaukee & St. Paul Railway,* 254 Mass. 569. *Riverside & Dan River Cotton Mills* v. *Menefee*, 237 U. S. 189. *Philadelphia & Reading Railway* v. *McKibbin*, 243 U. S. 264, 265. *Bank of America* v. *Whitney Central National Bank*, 261 U. S. 171, 173.

The evidence is reported, and in our opinion it establishes these facts: The defendant was engaged in the manufacture and sale of motor cars with general offices in Detroit, Michigan, and several manufacturing plants, all outside this Commonwealth. Prior to November 1, 1935, the defendant had a contract with a "distributor" located in Boston under which the defendant sold cars to the distributor on

the distributor's orders, accepted by the defendant, payment to be made in advance or by sight draft with bill of lading attached, and wherein it was provided that sales should be understood to be made at Detroit and that the distributor was not authorized to act as the agent of the defendant. The cars were resold in this Commonwealth by the distributor, partly at retail and partly to various local dealers selected by the distributor subject to the defendant's approval. The defendant fixed the form of contracts between the distributor and the dealers and through these contracts controlled the prices at which cars should be sold to the public and some other matters of importance to the defendant, but it did not in general operate the business either of the distributor or of the dealers. The distributor occupied a building in Boston which was owned by a corporation all of the stock of which was held by the defendant. The defendant maintained in its direct employ as its sales representative, sometimes called "District Manager," one Ackerman, whose duties in general were to travel about visiting distributors and dealers, inspecting their places of business, conferring with them as to policies and endeavoring to maintain good will and to stimulate sales. Chantler was Ackerman's assistant in New England, subject to his direction, but doing substantially the same kind of work which Ackerman did. Ackerman also covered much territory outside of New England. Neither Ackerman nor Chantler sold cars.

On October 31, 1935, the Boston distributor discontinued business. This broke the connecting link between the defendant and the local dealers. As by the terms of the contracts under which they had been operating the dealers could not buy directly from the defendant, some new relationships must be established until another distributor could be found, if cars were to be sold. Thereafter the evidence shows certain activities of Ackerman and of Chantler, substantially all of which are stated or can reasonably be inferred to have taken place in Massachusetts and which arose more or less directly out of the changed conditions. On November 1 Chantler moved his residence to Massa-

chusetts.   The defendant supplied to him and he used
stationery bearing the defendant's name.   He got into
contact with the dealers in Massachusetts, of whom there
were about fourteen, relative to having them obtain cars
directly from Detroit and, together with Ackerman, trans-
mitted their orders to Detroit.   One of the first problems
related to the Boston Automobile Show, which was to be
held during the week of November 16 to 23.   It was important
that the defendant's product be represented there.   Ordi-
narily the distributor would arrange such representation,
but as there was no distributor, dealers insisted that the
defendant should attend to the matter.   "They asked . . .
[the defendant] to practically take over the exhibiting of
the cars for them."   The defendant shipped to Ackerman
at Boston for exhibition seven cars which had already
been paid for by the distributor at Bridgeport, Connecticut.
Ackerman made the arrangements to get these cars.   He
negotiated for space at the show for which the defendant
paid several hundred dollars.   Chantler contracted in behalf
of the defendant for the transportation of the cars from the
railroad to the show, and procured a telephone, furniture,
lights, signs, a porter, and service for the cars to be shown.
Ackerman and Chantler attended the show from time to
time and arranged with the dealers for their presence on
the floor according to a schedule and supplied them with
passes and tickets.   After the show the following disposition
was made of the seven cars which had been exhibited.
Through arrangements made by Ackerman with the con-
sent of the Bridgeport distributor two of the cars were
delivered in Massachusetts to employees of the defendant
and were charged to them.   A third car was sold through
Ackerman and Chantler to a dealer in New Bedford.   The
remaining four cars went on to the Bridgeport distributor.
Ackerman returned the check by which the Bridgeport
distributor had originally paid for the seven cars, and that
distributor was eventually charged only for the four which
it finally received.   Before these cars were sent to Bridge-
port they were stored by the defendant at its expense at a

garage in Boston. There they were attached by trustee process. Chantler as the representative of the defendant communicated with the plaintiff's attorney in order to get the cars released. After a conference between the plaintiff's attorney and an attorney representing the defendant the attachment was discharged.

"During the Show Chantler 'took' two orders for cars from dealers, one for three and one for four cars, in the sense that he 'took information from the dealers' " as to the types of cars wanted, wrote it on blanks known as distributors' order blanks, which were signed by the dealers, and sent these blanks to Detroit.

When the Boston distributor ceased business it had in stock fifteen new cars which had been paid for by a finance company, and of which the finance company had taken and held possession in this Commonwealth. During the show, in order to avoid the injury which would result to the defendant from a forced sale by the finance company below standard prices, Ackerman, as the defendant's representative, sold these cars on behalf of the finance company to the defendant's Bridgeport distributor.

Written reports of Chantler's activities which he made several times a week to the Detroit office, all of which were competent as parts of a continuous course of conduct, even though some were made after the date of the service, show that he arranged with a "trailer company" for delivery of cars by trailer; that he procured the acceptance by a dealer in Lawrence of a car which had been refused by another dealer; and that he "Signed new dealer contract" with a dealer at Lowell, and negotiated with another prospective dealer. He writes, "I expect to sell several more dealers."

The foregoing subsidiary facts were in part expressly found by the trial judge, whose findings we adopt as our own, on the reported evidence, and in part are now first stated by us as our findings upon the evidence. We do not pause to discuss the question of the burden of proof under the plea. The evidence is for the most part either documentary or drawn from employees of the defendant on the

witness stand.   There is little real dispute as to facts.   All the findings would be the same whichever side had the burden of proof.

In our opinion, these facts taken together are sufficient to warrant the inference that the defendant, when the service was made, was engaged in business here within the meaning of G. L. (Ter. Ed.) c. 223, § 38, and that under the general controlling principles of law it had submitted itself to the jurisdiction of this Commonwealth.   Each case depends upon its own peculiar facts.   *People's Tobacco Co. Ltd.* v. *American Tobacco Co.* 246 U. S. 79, 87.   If the defendant was not doing business here before November 1, 1935, then at least at that time it came into this Commonwealth through its authorized agents, one of whom changed his residence to this Commonwealth.   It then attempted to take control of the situation arising from the withdrawal from business of its local distributor.   It made contracts and did business here in various ways and to the extent required to accomplish its purpose.   To a considerable degree it substituted itself for the local distributor.   It went beyond the mere solicitation of orders here, which has been held not enough.   *Thurman* v. *Chicago, Milwaukee & St. Paul Railway*, 254 Mass. 569, 571.   *People's Tobacco Co. Ltd.* v. *American Tobacco Co.* 246 U. S. 79, 87.   *Green* v. *Chicago, Burlington & Quincy Railway*, 205 U. S. 530.   Its transactions were more than isolated instances.   They went far enough to partake of the character of a course of dealing for the time being, even if it may be that that course of dealing was not intended to be permanent.   That the defendant did not do more business than it did may well have resulted from the fact that the defendant itself ceased to manufacture cars on December 17, 1935.   We think the case distinguishable from the many cases cited by the defendant in which it has been held that no jurisdiction had been acquired.   *Reynolds* v. *Missouri, Kansas & Texas Railway*, 224 Mass. 379, affirmed, 255 U. S. 565.   *International Harvester Co.* v. *Kentucky*, 234 U. S. 579.   *St. Louis Southwestern Railway of Texas* v. *Alexander*, 227 U. S. 218, 228.   *Kansas City Structural Steel Co.* v. *Arkansas*,

269 U. S. 148. *Malooly* v. *York Heating & Ventilating Corp.*
270 Mich. 240. *La Porte Heinekamp Motor Co.* v. *Ford
Motor Co.* 24 Fed. (2d) 861. *Wilson* v. *Hudson Motor
Car Co.* 28 Fed. (2d) 347. *Tauza* v. *Susquehanna Coal
Co.* 220 N. Y. 259. See *Plibrico Jointless Firebrick Co.* v.
*Waltham Bleachery & Dye Works*, 274 Mass. 281; *Trojan
Engineering Corp..* v. *Green Mountain Power Corp.* 293
Mass. 377; *Hutchinson* v. *Chase & Gilbert, Inc.* 45 Fed.
(2d) 139, 141; *Davega, Inc.* v. *Lincoln Furniture Manuf.
Co.* 29 Fed. (2d) 164; *Tignor* v. *L. G. Balfour & Co.* 167
Va. 58. Compare *Zimmers* v. *Dodge Brothers, Inc.* 21 Fed.
(2d) 152; *Frink Co. Inc.* v. *Erikson*, 20 Fed. (2d) 707;
*Southeastern Distributing Co.* v. *Nordyke & Marmon Co.* 159
Ga. 150; *Holzer* v. *Dodge Brothers*, 233 N. Y. 216; *Hupp
Motor Car Corp.* v. *Kanzler*, 129 Ore. 85.

The evidence also shows that Chantler was the agent in
charge of the defendant's business within the meaning of
the statute, if we assume, but without deciding, that the
defendant can dispute the return as to this after it is once
decided that the defendant was in fact doing business within
the Commonwealth. See *Bay State Wholesale Drug Co.* v.
*Whitman*, 280 Mass. 188, 194. And Chantler did not lose
his character as an agent upon whom service might be
made even if Ackerman, who was Chantler's superior but
who lived in Pennsylvania, was also temporarily within the
Commonwealth at the moment of service, although there
was no evidence that such was the fact.

To hold a corporation like the defendant, doing business
here, to answer here to a suit by a resident of this Common-
wealth arising out of transactions which took place here is
not to impose an unreasonable burden upon interstate
commerce, even if the defendant's operations were in such
commerce. *International Harvester Co.* v. *Kentucky*, 234
U. S. 579, 587. *Davis* v. *Farmers Co-operative Equity Co.*
262 U. S. 312, 316. *St. Louis, Brownsville & Mexico Rail-
way* v. *Taylor*, 266 U. S. 200, 207. *International Milling
Co.* v. *Columbia Transportation Co.* 292 U. S. 511. See
*Trojan Engineering Corp.* v. *Green Mountain Power Corp.*
293 Mass. 377, 384. Compare *Michigan Central Railroad*

v. *Mix*, 278 U. S. 492; *Thurman* v. *Chicago, Milwaukee & St. Paul Railway*, 254 Mass. 569, 573.

As the service upon Chantler was binding upon the defendant, the plaintiff was not injured by the ruling of the judge sustaining the plea as to other attempted services. Without intending to throw doubt upon the correctness of that ruling, it seems unnecessary to pass upon it.

*Interlocutory decree entered January 8, 1937, affirmed.*