### HINCHCLIFFE MOTORS, Inc., v. WILLYS–OVERLAND MOTORS, Inc.

No. 86.

District Court, D. Massachusetts.

Dec. 7, 1939.

Shorey & Tiffin, of Boston, Mass., for plaintiff.

Thomas Hunt and Gaston, Snow, Hunt, Rice & Boyd, all of Boston, Mass., for defendant.

BREWSTER, District Judge.

Plaintiff, on November 17, 1938, brought in the state court this suit in equity for an accounting and for injunctive relief. The suit was removed to this court. Defendant now moves to quash the subpoena and order to show cause on the ground that there was no sufficient service upon the defendant. This motion was heard upon affidavits, from which the following facts appear to be established.

The plaintiff is a Massachusetts corporation. The defendant is a Delaware corporation, engaged in the manufacture and sale of automobiles, with a principal place of business in Toledo, Ohio. It has no warehouse, factory or place of business in Massachusetts, and has no property therein. A service was made November 17, 1938, upon the defendant corporation "by delivering to William Peiter, Esq., as its agent and the person in charge of its business, an attested copy" of the subpoena. Peiter was a "sales representative" or "field man" who, under the supervision of the vice-president in charge of sales, had the duty of procuring for the Company specifications for automobiles, and if there were no distributors in the territory to which he was assigned, he was to deliver and recommend to the defendant persons, firms and corporations that might become distributors of defendant's product. He was to assist in looking for dealers whom he could recommend to the distributors. It was also his duty to gather information respecting the operations of distributors and dealers and to report to the defendant, at its office in Toledo. His authority was limited to discovery, investigation, recommendation and report. He had no authority to close contracts with distributors, or to bind the corporation by any contract whatsoever, or to make collections on behalf of the corporation. At the time of the service upon him, his territory covered the states of Maine, Rhode Island and a part of Massachusetts. He did not reside in Massachusetts and maintained no office in this Commonwealth. While working in Massachusetts he stopped at a Boston hotel, where he met persons who were interested in becoming distributors and where he was found at the time of the service.

Peiter was employed by the defendant as sales representative from November 7, 1938, to January 31, 1939. During this time, defendant had no distributors in Massachusetts.

Between November 12 and 19, 1938, the Boston Automobile Show was held. The defendant rented space in the show for the purpose of exhibiting its product, and several models were exhibited. These cars were consigned to a local dealer, but Peiter and another sales representative Stacy G. Benson, who was working with Peiter in this territory, were instructed by defendant to re-sell the cars exhibited at the show to dealers other than the one to whom they had been consigned, after satisfactory arrangements had been made with the said consignee. This they did. The regular course of business pursued by the defendant in November, 1938, was to enter into Distributor Sales Agreements which were, by their express terms, made in Toledo, Ohio, and contained provisions that the distributor should not be the agent or local representative of the corporation for any purpose. The distributor then entered into contracts with dealers which had to be approved by the defendant before they became effective.

It appears that no such Distributor Sales Agreement was entered into in Massachusetts while Peiter and Benson were representing the defendant here. They were, however, instrumental in securing several dealers who entered into contracts with the defendant, and they secured other dealers who entered into contracts with Willys-Overland Distributors, Inc., another corporation.

These contracts were forwarded to the office of the defendant at Toledo, Ohio, where they were approved and finally executed on behalf of the corporation. While the affidavits do not disclose a copy of these contracts between the dealer and the defendant, it is a fair presumption that in form they were the same as those entered into between dealers and distributors, with appropriate modification. These contracts all contained the provision that the dealer should not be the agent or legal representative of the defendant for any purpose and the dealer had no authority to create any obligation of any kind on behalf of the defendant or to accept any service of process upon it.

There were statements in Benson's affidavit to the effect that he had signed a contract as "Zone Manager" and that quarters had been rented for the carrying on

of business, but from other affidavits I am satisfied that Benson acted in this capacity for the Willys-Overland Distributors, Inc., and that whatever arrangements were made for renting space, or securing service here, were made with the Distributors, Inc.

■ This Court is given jurisdiction over suits between citizens of different states, but in order to obtain that jurisdiction there must be a valid service upon the defendant within the District. This is a jurisdictional requirement, Green v. Chicago, Burlington & Q. Ry. Co., 205 U.S. 530, 532, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710, and in a case where the defendant is a foreign corporation the validity of the service depends on whether the corporation was doing business in such a manner and to such an extent as to warrant the inference that, through its agents, it was present in the district. Green v. Chicago, Burlington & Q. Ry. Co., supra; Philadelphia & Reading Ry. Co. v. McKibbin, supra; People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Consolidated Textile Co. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047.

A recent statement of the rule is found in this last case, above cited, taken from the earlier opinion in the American Tobacco Company case. It is stated that [246 U.S. 79, 38 S.Ct. 235, 62 L.Ed. 587, Ann. Cas.1918C, 537] "The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

■ If the corporation is doing business within the State, the process will be valid only if served upon some authorized agent. Philadelphia & Reading Ry. Co. v. McKibbin, supra; St. Louis Southwestern Ry. Co. v. Alexander, 227 U.S. 218, 226, 33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas.1915B, 77.

■ Whether the defendant corporation is doing business in a state so as to be amenable to its process depends upon the particular facts of each case. St. Louis Southwestern Ry. Co. v. Alexander, supra; International Harvester Co. of America v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139.

The facts of the case at bar approach the border line. It may be helpful to consider some of the leading cases which have dealt with this question.

In Green v. Chicago, Burlington & Quincy Ry. Co., supra [205 U.S. 530, 27 S.Ct. 596, 51 L.Ed. 916], an Iowa corporation employed an authorized agent, known as "district freight and passenger agent", to solicit passenger and freight traffic in Pennsylvania. He maintained an office there with a clerical force, advertised to the public and appointed sub-agents to solicit for the railroad. He did not sell tickets over the railroad but received railroad fare and secured tickets from connecting carriers and gave prepaid orders entitling passengers to tickets over the defendant's line. It was held that the railroad did not submit itself to the jurisdiction of the Pennsylvania courts so as to be amenable to process.

In Philadelphia & Reading Ry. Co. v. McKibbin, supra, the railroad maintained no ticket office in New York, but tickets over its line were sold by agents of the connecting carrier. Its name was on a sign in the New York office, and it was listed in the telephone directory, having the same number as that of the connecting carrier, but it appears that this listing was not authorized by the railroad. In this case it was held that the railroad was not within the jurisdiction of the New York courts.

In People's Tobacco Company, Ltd. v. American Tobacco Co., supra, the Company had been obliged, under an order of court, to sever relations with a subsidiary, and after the dissolution the defendant had sold to jobbers in the state and had agents soliciting orders to be turned over to the jobbers. They had, however, no right to make sales, collect money, or extend credit. The foreign corporation, by these facts, was not brought within the jurisdiction of the court where suit was brought.

A banking corporation of Louisiana had the usual dealings with several corresponding banks in New York, where it carried continuously an active regular deposit account. It had with these correspondents other transactions involving the relationship of principal and agent. The question whether this bank could be held to answer to a suit in the New York courts, where service was made upon an officer of the

bank temporarily in New York, was considered in the case of Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594. In that case the Court held that it was without jurisdiction. It said that jurisdiction "flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established."

Davega, Inc. v. Lincoln Furniture Mfg. Co., 2 Cir., 29 F.2d 164, is a case where a Virginia corporation was sued in the New York State courts and the suit removed to the Federal court. The service was upon the president of the defendant while temporarily in New York. In that case it appeared that the defendant secured orders in New York, through a representative who worked on commission, for about $200,000 of furniture per year; that he sold in New York about $1,000 of furniture which had been shipped there for samples. The representative collected some overdue accounts. The president and sales manager came to New York ten or eleven times a year discussing business matters with the representative and at times adjusting accounts with customers; and its sales manager, while in New York, arranged a contract for radio cabinets, and it also solicited other orders for radio cabinets. A motion to dismiss the action for want of jurisdiction was affirmed by the Circuit Court of Appeals for the Second Circuit.

Other cases may be cited, involving facts held not to be sufficient to bring a foreign corporation within the jurisdiction of the court where suit was brought. Old Wayne Mutual Life Ass'n of Indianapolis v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345; Rosenberg Bros. & Co., Inc. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372; Minnesota Commercial Men's Ass'n v. Benn, Executrix of Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573; Maxfield v. Canadian Pacific Ry. Co., 8 Cir., 70 F.2d 982; Norwalk v. Air-Way Electric Appliance Corp., D.C., 14 F.Supp. 129; Lauricella v. Evening News Pub. Co., D. C., 15 F.Supp. 671; Livingston v. Chesapeake & O. Ry. Co., D.C., 18 F.Supp. 863; Pioneer Utilities Corp. v. Scott-Newcomb, Inc., D.C., 26 F.Supp. 616; Hedrick v. Canadian Pacific Ry. Co., D.C., 28 F.Supp. 257.

■ It would appear from a consideration of the foregoing authorities that the mere solicitation of business in a foreign state is insufficient to subject the corporation to service of process, even though an authorized agent maintains an office within the state and occasionally makes collections of overdue accounts.

Cases that fall on the other side of the line, which have upheld the jurisdiction of the court, deal with a continuous course of business transactions within the state by authorized agents, who not only solicit business for the defendant but are clothed with authority to act for the corporation in collecting payments for products sold (International Harvester Co. v. Kentucky, supra), or authority to adjust claims (Pennsylvania Lumbermen's Mut. Fire Ins. Co. v. Meyer, 197 U.S. 407, 415, 25 S.Ct. 483, 49 L.Ed. 810; St. Louis Southwestern Ry. Co. v. Alexander, supra). In Louisville & Nashville R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711, the foreign corporation had appointed an agent to receive service, as required by the state law. That fact was deemed important in arriving at the conclusion that the corporation was within jurisdiction. Compare Neirbo Co. et al. v. Bethlehem Shipbuilding Corporation, Ltd., 60 S.Ct. 153, 84 L.Ed. ——, decided Nov. 22, 1939.

The courts have, in some instances, referred to the authority of the agent to receive payment and settle disputed claims as an important factor. People's Tobacco Co., Ltd. v. American Tobacco Co., supra; Davega, Inc. v. Lincoln Furniture Mfg. Co., supra.

■ The defendant in the instant case had no office in Massachusetts. Its agents here had no authority to bind the defendant by contracts. Their authority was limited to recommending distributors and dealers who entered into contracts which, by their terms, were entered into in Ohio. These agents were without authority to make collections or adjust claims. All of these matters were finally concluded by the defendant at its home office in Toledo, Ohio. The activities of the defendant's officers and agents at the Automobile Show would, no doubt, amount to "transacting business" in Massachusetts. Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp., 1 Cir., 46 F.2d 623; Atlantic National Bank v. Hupp Motor Car Co., Mass., 10 N.E.2d 131.

But the courts have drawn a nice distinction between "transacting business" and "doing business" to such an extent as to warrant the inference that the corporation

is present in the district. In Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, it was held that a corporation might transact business so as to be reached under the Anti-Trust laws, although it would not be present by agents carrying on business in such manner that it was "found" therein and, therefore, amenable to local process.

Plaintiff relies upon Atlantic National Bank of Boston v. Hupp Motor Car Co., supra. That was a case very similar in its facts to the case at bar. The defendant was a foreign corporation manufacturing automobiles and had a distributor's contract with a distributor in Boston, which contract was terminated October 31, 1935, whereupon authorized agents of the defendant, with duties very similar to those of Peiter in the case at bar, got in contact with the dealers relative to having them obtain cars directly from the defendant. The defendant exhibited in the Boston Automobile Show and, through its representatives, took direct charge of the Exhibition. These agents made arrangements for the sale of these cars, partly in Massachusetts and partly in Connecticut. During the show, one of the employees took orders for cars which were sent on to the defendant at Detroit. One of the agents, acting for the defendant in Massachusetts, took up his residence here.

The Court found that the facts were sufficient to warrant the inference that the defendant, when the service was made, was engaged in business here, within the meaning of G.L.Ter. Ed., c. 223, sec. 38, and that under the controlling principles of law it had submitted itself to the jurisdiction of the Commonwealth.

I would have no difficulty in agreeing that the facts of that case were sufficient to warrant the inference that the defendant was within the jurisdiction of the Massachusetts courts, within the meaning of Massachusetts statutes. These statutes provide that in an action against a foreign corporation, with or without an usual place of business, which is engaged in or soliciting business in the Commonwealth permanently or temporarily, service may be made upon an officer of the corporation or upon its agent or other officers in charge of its business.

■ The question of the jurisdiction of this court, however, must be determined with reference to the rule obtaining in federal courts and is not controlled by state statutes or decisions, Hedrick v. Canadian Pac. Ry. Co., supra, and this is true also with respect to cases removed from a state court. Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517; Mechanical Appliance Co. v. Castleman, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272.

The only Federal case cited by the plaintiff is Moore Machinery Co. v. Stewart-Warner Corp., D.C., 27 F.Supp. 526. The facts of that case could easily afford grounds for a distinction. There the foreign corporation carried on business in a state to a much greater extent than did the defendant in the instant case—there was more than the soliciting and supervising of distributors. It directly entered into many business transactions within the state.

Applying the criterion which appears to have been established by adjudicated cases in the Federal court, I have reached the conclusion that at the time of the service the defendant had not subjected itself, by its activities in Massachusetts, to the local jurisdiction. Clearly, the defendant intended otherwise, and I am unable to find in the affidavit any warrant for the inference that it had done more than it intended. In view of this conclusion, it is unnecessary to consider whether Peiter was properly served as agent of the corporation.

Defendant's motion to quash and dismiss is allowed.