Gillen, J.
This is an action of contract and tort in which the plaintiff seeks to recover damages for breach of an employment contract and for wrongfully interfering with the contract. The defendant, The House of Stuart, Inc., filed a plea in abatement as follows: “Now comes The House of Stuart, Inc., named as defendant in the writ and declaration in the above action and without appearing in said action except specially or in any way submitting to the jurisdiction of said court of said Commonwealth, says as follows :
“The House of Stuart, Inc., is not a Massachusetts corporation and is not an inhabitant of said Commonwealth and has no place of business in said Commonwealth; no service of process has been made within said Commonwealth on said Company or on any of its officers and no effectual attachment of property of said company within said Commonwealth has been made upon the writ in said action.
*225 “Wherefore the said House of Stuart, Inc., moves that said action be dismissed.”
Service of the writ upon the defendant, The House of Stuart, Inc., was made “by delivering to Mrs. Mildred Warren Livingston, its agent in charge of its business, a summons together with an attested copy of this writ.”
At the hearing on the plea in abatement of the defendant, The House of Stuart, Inc., evidence was introduced tending to show the facts as found by the trial judge and hereinafter set forth.
At the close of the hearing and before final arguments the plaintiff filed certain requests for rulings of law. The trial judge acted upon each one of these requests for rulings. He also filed a memorandum entitled “Findings of Fact and Rulings of Law in re: Plea in Abatement of the Defendant The House of Stuart, Inc.,” as follows:
“The defendant, The House of Stuart, Inc., is a New York corporation, with its home office in Newark, New York. It is engaged in the business of selling cosmetics directly to the consumer. It has no office in Massachusetts, is not listed in any directory or telephone book in Massachusetts, it has no bank account in Massachusetts and carries no stock of goods and owns no property in Massachusetts. It withholds no social security taxes in Massachusetts and pays no employment security taxes in Massachusetts.
“The defendant, Mrs. Mildred Warren Livingston, a resident of the Brighton district of Boston, using for business purposes the name of Mildred Warren, is employed as a district manager or recruiter for the Boston Metropolitan Area, and is the only district manager or recruiter of the defendant corporation in this area. She has been employed by the defendant corporation since the latter part of June or early in July, 1948, and succeeded the plaintiff, Gladys W. Talbot, who previously acted in a similar capacity. Mrs. *226 Warren’s duties are to interest others by personal contact in becoming demonstrators for the defendant company and in supervising and instructing those acting as demonstrators. She interviews persons who are interested in becoming demonstrators and has them fill out application blanks which are forwarded by her to the defendant company at its office in Newark together with a confidential report or rating sheet prepared by her regarding the applicant. If the application is accepted by the defendant company a case of samples and equipment is sent by the defendant company to the demonstrator. Mrs. Warren as district manager or recruiter is furnished with a case of samples and equipment, with cards, bearing the name of the defendant company and her own name as District Manager with her address and telephone number and letter heads of the defendant company with the same information. She is also furnished with application blanks for the demonstrators and blanks for her own confidential reports upon the applicants and also certain pamphlets entitled ‘Beauty Clinic’ sheets describing the defendant company’s products and also sheets for use in connection with conducting clinics. These last two pamphlets or sheets are distributed by her to persons interested in the defendant company’s organization. She receives the circulars and letters sent to the demonstrators and sponsors. She is supposed to interest and obtain as many new demonstrators as she is able and to instruct them in the methods of using the defendant company’s products and the manner of obtaining and conducting clinics. The demonstrators do not work under her direct supervision but she does hold meetings from time to time for the purpose of meeting new applicants, or instructing the present demonstrators and keeping track of their activities. She also at times attends some of the clinics or gatherings arranged by the demon *227 strators to assist them in their work and to see that the orders taken for the defendant company’s products are properly filled out. She also at times conducts clinics of her own. Since she was first employed by the defendant company early in July she was paid a weekly salary of $50. until the third week of September to allow her to become established. Since then she has been paid commissions from the clinics she herself conducts and an over-writing commission upon the total amount of orders secured in her area and commissions upon orders that she herself obtains. She makes no formal reports to the defendant company but does send them a weekly letter telling of the activities of the demonstrators in her area and of their plans for the coming week.
“The demonstrators or clinic directors organize or interest others called clinic sponsors or hostesses to hold social gatherings or parties, called clinics, to which about ten neighbors, friends or acquaintances of the sponsor are invited to the sponsor’s home and at which clinics the demonstrator brings her case of samples and equipment and shows the use to be made of the defendant company’s products. Orders are taken by the sponsor at these gatherings from those present and sent by the sponsor to the defendant company at its home office. If the orders are accepted by the defendant company the goods ordered are shipped to the sponsor who distributes the goods to those who ordered them, collects the money and sends it to the defendant company at its home office. The expense incurred in the conduct of these clinics is borne by the sponsor. The demonstrators are paid a commission on the orders obtained at the clinics that they conduct. The demonstrators are furnished by the company with order blanks and other literature tending to assist them in the manner of obtaining and conducting these clinics and for encouraging and stimulating *228 them in their work. A circular is also sent to each sponsor containing suggestions as to the manner of conducting the clinics and giving the sponsors the right to choose free of charge any of the company’s products up to a certain amount depending upon the total of the orders secured from the guests at the clinic. Demonstrators are paid $10. by the defendant company for each new demonstrator obtained by them.
“Mrs. Warren as District Manager has no place of business or telephone other than her home. Once in September she hired a room at the Hotel Statler for an afternoon for a meeting of applicants for demonstrator for which room she paid and was later reimbursed by the company. On two other occasions she hired a room at the Fensgate Hotel for a meeting of the demonstrators for which she paid and was later reimbursed by the company. She does from time to time send out notices for meetings to the demonstrators to instruct them in the manner of obtaining and conducting clinics and in the - use of the various cosmetic products of the defendant. The demonstrators are not required to attend these meetings although some of them attend, others do not. All complaints by the purchasers of the company’s products are sent to the home office of the company and are not handled by the district manager or the demonstrators.
‘ ‘ The district manager as well as the demonstrators may solicit orders from door to door and some of them do. The business of the defendant company in Metropolitan Boston is dependent upon the orders obtained at the clinics and other orders obtained by the demonstrators and Mrs. Warren. The defendant company did a gross business in the Metropolitan Area of Boston in 1948 of $3500 — $4000.
■ “I- find and rule that the above facts do not constitute such doing of business within the Commonwealth as to make *229 the defendant The House of Stuart, Inc., hable to service of process and that the defendant Mildred Warren Livingston was not an agent in charge of its business upon whom service could be made subjecting the defendant The House of Stuart, Inc., to the jurisdiction of this court.
“Plea in abatement sustained.”
The plaintiff claims to be aggrieved by the rulings of law as above set forth and by the rulings upon requests numbered 2, 4, 5, and 7.
The pleading device filed in the instant case while entitled a plea in abatement and referred to as such by both parties at the trial and during the arguments in this division, is in effect a motion to dismiss. But we regard it as a plea in abatement because the trial judge and both parties treated it as such and no issue was raised on the ground. Brotkin v. Feinberg, 265 Mass, at 295; Summers v. Boston Safe Deposit and Trust Co., 301 Mass. 167 at 168.
The plaintiff now complains that the form of the pleading device (plea in abatement) was faulty in that it did not set forth (1) a denial that the defendant corporation was soliciting business in Massachusetts (2) or that service was made on an agent in charge of the business of the defendant corporation. In answer to (1) we hold that the defendant corporation is legally within its right in “soliciting business” so long as it does not reach the status where it is “engaged in business” and consequently no denial was necessary. As regards (2) the plaintiff submitted to the trial judge requests for rulings of law on the question of whether or not the district manager was the agent in charge of the business, which were acted upon by the trial judge. He ruled and found as a fact that Mildred Warren Livingston was not an agent in charge of the business of the defendant corporation. By filling these requests for rulings of law the plaintiff was asking the trial judge to *230 rule on this aspect of the case although she knew that this particular phase of the case was not specifically referred to in the plea in abatement. By this act the plaintiff waived any right it possessed to claim that the plea in abatement was faulty.
The plaintiff requested and received a ruling on subject matter relevant to the issue and cannot now complain that the pleading device did not raise the issue specifically. Stein v. Canadian Pacific Steamships Ltd., 298 Mass. 479; Lewis v. Russell, 304 Mass. 41 at 44.
The trial judge ruled on the facts found that the defendant corporation was not doing such business within the. Commonwealth as to make it liable to service of process here, and that the defendant Mildred Warren Livingston was not an agent in charge of the business upon whom service could be made, subjecting the defendant corporation to the jurisdiction of this court. We hold there was no error in these rulings.
In Thurman v. Chicago, Milwaukee & St. Paul Ry., 254 Mass. 569 the court stated “It was said in Reynolds v. Missouri, Kansas & Texas Railway, 224 Mass. 379, 386: ‘The mere solicitation of business by a foreign corporation without more commonly has been held not to be the doing of business within a State. ’ When the validity of service of process upon a foreign corporation has depended upon a statute providing for service of process upon such corporations doing business within the State where the action is brought, or upon the doing of business within such State of such nature and extent as, apart from statute, to give jurisdiction under general principles of constitutional law, it has been held that solicitation of business is not such doing of business. Mere solicitors of business are not regarded as agents of the corporation in the sense required for jurisdictional purposes.”
*231 In the instant case all the activity of the defendant corporation in this State was within the realm of ‘1 solicitation of business”. The authority of the District Manager of the Boston Metropolitan Area, so-called, extended solely to a development and extension of the effort to increase the volume of the sales of the corporation here. She had no general authority to act as an agent of the defendant corporation on various phases of the corporation business as one finds in a general agent.
On the other hand her authority extended only to the recruiting of demonstrators. The home office of the corporation decided whether or not a demonstrator proposed by the district manager became an employee of the corporation. Nor did the demonstrators work under the direct supervision of the district manager. The demonstrators and clinic sponsors “pushed” the products of the defendant with a view to solicit orders that would eventually be filled in another State. And the products were forwarded to the purchasers in the Boston Metropolitan Area through the clinic sponsors who would send the money they collected to the home office. The district manager or demonstrators did not distribute the goods purchased here. All complaints by the purchasers of products were sent to the home office and were not handled by the district manager or the demonstrators.
The district manager, demonstrators and sponsors had no “stock pile” of the products here that could be distributed when an order was taken.
The corporation had no permanent headquarters here. Nor did it have a bank account in a local institution. Its home office was in New York. Nor was it listed in any Massachusetts directory or telephone book.
The plaintiff urges that in International Shoe Co. v. The State of Washington, 326 U. S. 310, the Supreme Court *232 in disposing of a jurisdictional question indicates that mere solicitation of business would be enough to give jurisdiction where it results in a regular flow of goods into a State.
In this case there was an appeal, by one against whom contributions to a State Unemployment Compensation Fund had been assessed, from a judgment of the Supreme Court of the State of Washington which affirmed an order sustaining the assessment. One of the issues was whether the appellant, a Delaware corporation, had by activities in the State of Washington rendered itself amenable to proceedings in the courts of that State. There was evidence that the appellant employed eleven to thirteen salesmen in the State of Washington from 1937 to 1940 and their commissions for each year totaled $31,000. It was held that this resulted in a substantial volume of merchandise regularly shipped by appellant to purchasers in the State of Washington, and as a result Washington had jurisdiction.
In the instant case the only evidence on this phase of the case showed that in 1948 the defendant corporation did a gross business in the Boston Metropolitan Area of $3500. to $4000. In International Shoe Co. v. The State of Washington, supra, the commissions alone on the sale of goods amounted to nearly ten times the gross business carried on here by the defendant corporation in a year and we are not prepared to say that by reason of this amount of gross business it should be held that the defendant corporation was “engaged in business” in Massachusetts.
The plaintiff further urges that the facts in the instant case are stronger than in the case of Reynolds v. Missouri, Kansas and Texas Railway Company, 224 Mass. 379, where it was held that the defendant corporation was engaged in business here, but we think they are to be distinguished. In the Reynolds case a resident of Massachusetts was the New England passenger agent of a railroad corporation *233 organized under the laws of Kansas and he was advertised by the corporation generally as its New England passenger agent. By agreement he was to represent the railway system with headquarters in Boston. He was consulted by its officials in regard to passenger business. He and others sold tickets within this State to which were attached coupons entitling the traveler to transportation over the lines of the defendant railway company. He received money for transportation orders on the defendant’s line and accounted for such money to the defendant. He took up complaints as to service with the executive officers of the defendant. .All these activities were outside a mere solicitation of business and warranted a conclusion that the defendant was engaged in business here.
The case of Atlantic National Bank v. Hupp Motor Car Corp., 298 Mass. 200, where it was held the defendant was engaged in business in Massachusetts is urged by the plaintiff as a weaker case than the instant one from the standpoint of activities of the defendant corporation. We do not think so. In Atlantic National Bank v. Hupp Motor Car Corp., supra, the defendant was engaged in the manufacture and sale of motor cars with general offices in Detroit and had several manufacturing plants, all outside this Commonwealth. Before November 1, 1935, the defendant had a contract with a “distributor” located in Boston under which the defendant sold cars to the distributor on the distribution orders, accepted by the defendant, payment to be made in advance or by sight draft with bill of lading attached, and wherein it was provided that sales should be understood to be made at Detroit, and that the distributor was not authorized to act as the agent of the defendant. The cars were resold by the distributor in this Commonwealth partly at retail and partly to dealers. The defendant maintained in its direct employ as its sales representa *234 tive, sometimes called District Manager, one Ackerman, whose duties in general were to travel about visiting distributors and dealers, inspecting their places of business and conferring with them as to policies and endeavoring to maintain good will and to stimulate sales. Chantler was Ackerman’s assistant in New England subject to his direction but doing substantially the same kind of work Ackerman did. Neither Ackerman nor Chantler sold cars.
. On October 31, 1935, the Boston distributor discontinued business. This broke the link between the defendant and the local leaders. On November 1, Chantler moved his residence to Massachusetts. The defendant supplied him with stationery bearing the defendant’s name. He got into contact with dealers in Massachusetts relative to having them obtain cars directly from Detroit and with Ackerman submitted their orders to Detroit.
The dealers requested the defendant to take over the exhibiting of the cars for them at the Boston Automobile Show November 16 to 23. The defendant shipped to Ackerman at Boston for exhibition seven cars which had already been paid for by a distributor in Connecticut. After the show Ackerman and Chantler sold one of the cars to a dealer in New Bedford. Two of the cars were delivered to employees of the defendant in Massachusetts. The remaining four cars were sent back to the Bridgeport distributor. Ackerman returned the check for the seven cars to the distributor in Bridgeport and that distributor was eventually charged with the four cars he finally received. Before these cars were sent to Bridgeport they were stored by defendant in a Boston garage. While there they were attached and Chantler as the defendant’s representative negotiated with the plaintiff’s attorney for the discharge of the attachment and the cars were released.
*235 When the Boston distributor ceased business it had in stock fifteen new cars which had been paid for by a finance company and which the finance company seized. Ackerman as the-defendant’s representative sold those cars on behalf of the finance company to the defendant’s Bridgeport distributor, in order to avoid injury to the defendant which would have resulted if the finance company sold the cars at prices below standard.
Written reports of Chantler showed he had arranged with a “trailer company” for delivery of cars by trailer and that he procured the acceptance by a dealer in Lawrence of a car which had been refused by another dealer.
We think the activities of Chantler and Ackerman were not confined to those one would expect in the mere solicitation of business but had such general ramifications as to warrant a conclusion that the defendant was engaged in business in this Commonwealth. We distinguish this case from the instant case.
Further the plaintiff urges that a comparison of the facts in the instant case with those in Stein v. The Canadian Pacific Steamships Ltd. and Stein v. Canadian Pacific Railway Company, 298 Mass. 479, where it was held the defendants were engaged in business in this Commonwealth shows that the defendant corporation in the instant case was carrying on activities in this Commonwealth to a greater extent than the defendants in the Stein case. We do not think so. Hart, an employee of the Canadian Pacific Railway Company, in its passenger department, had charge of an office in Boston, his duties being to solicit passenger business for both defendants, to supervise the staff of solicitors, to receive money for tickets, to arrange for transportation and to sell Passengers Travelers Cheques. His name is listed in the telephone book as general agent and his name appears on stationery and advertising as general *236 agent. Some steamers of the Canadian Pacific Steamships Ltd. make stops at Boston. The rent of its Boston office is paid for by the Canadian Pacific Bailway Company.
We hold there is no comparison between the activities in this Commonwealth in the instant case and the Stein case. There the scope of the undertakings go far beyond the mere solicitation of business and constitute the actual transaction of business in this Commonwealth.
We find no error in the rulings of law made nor do we find any error in the treatment of the requests for rulings of law filed by the plaintiff.
We can conceive that an increased volume of business in this Commonwealth over and above what appears in the record might in time result in a conclusion that the defendant corporation is “engaged in business” in this State. But we are not prepared to say that the rulings of the trial judge are plainly wrong on the basis of the facts found. All the activities of the female defendant pointed to a ‘■‘mere solicitation of business.” Her authority was so definitely restricted to duties along the line of a chief recruiter of demonstrators and her endeavors so carefully limited to efforts to increase the volume of sales that her activities come within the rule set down in the Thurman case that “mere solicitors of business are not regarded as agents of the corporation in the sense required for jurisdictional purposes.”
No authority has been called to our attention to lead us to the conclusion that the volume of business as of the record in the instant case was such a substantial volume of merchandise regularly shipped to purchasers in this State that we would be warranted in holding that the defendant corporation was “engaged in business” in this State.
The order is: Beport dismissed.