**Stanley KAHN and Courtney Kahn, co-partners trading as Kahn Brothers, Appellants,**

v.

**The MAICO COMPANY, Incorporated, a body corporate of the State of Minnesota, Appellee.**

**No. 6786.**

United States Court of Appeals Fourth Circuit.

Argued June 4, 1954.

Decided Oct. 13, 1954.

Isidore Ginsberg, Baltimore, Md. (Hyman Ginsberg and Ginsberg & Ginsberg, Baltimore, Md., on brief), for appellants.

Stuart S. Janney, Jr., Baltimore, Md. (Robert M. Thomas and Venable, Baet-

jer & Howard, Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order dismissing an action for lack of jurisdiction. The plaintiffs, residents of Maryland, constituted a partnership which held a franchise contract to act as exclusive distributor in certain Maryland counties of hearing aids manufactured by defendant. The action was to recover damages of defendant for alleged breach or wrongful termination of this contract. It was dismissed on the ground that defendant, a foreign corporation, was not doing business in the State of Maryland within the meaning of the applicable Maryland statute, Code Art. 23, sec. 88(a), which provides:

"Every foreign corporation doing intrastate or interstate or foreign business in this State shall be subject to suit in this State by a resident of this State or a person who has a usual place of business in this State, (1) on any cause of action arising out of such business, and (2) on any cause of action arising outside of this State."

The evidence shows clearly that plaintiffs were more than mere dealers in or distributors of defendant's products. Defendant was engaged in the manufacture and sale of hearing aids which it advertised and guaranteed to purchasers. It entered into a contract, designated a franchise contract, with plaintiffs under which plaintiffs were given the exclusive right to deal in these aids within certain counties in Maryland. While the contract speaks of the right of plaintiffs to purchase and resell the aids within the territory granted, other provisions of the contract and the evidence adduced at the hearing before the District Judge show clearly that much more than sale and resale were involved and that the business of plaintiffs was in fact controlled and directed by defendant. The prices at which plaintiffs made sales were fixed by defendant. Every sale was made on an order form provided by defendant, was reported to defendant and defendant wrote the purchaser with regard thereto. Advertisements were furnished and paid for by defendant under an arrangement which virtually precluded the use of other advertising by plaintiffs. Inquiries with respect to hearing aids were referred by defendant to plaintiffs, who were required to report to defendant action taken thereon. Plaintiffs were called upon by defendant to make deliveries of hearing aids to government agencies on sales negotiated within the state by another representative of defendant.

Defendant gave a written guaranty on every aid sold by plaintiffs and authorized plaintiffs to make the contract of guaranty in its behalf. It authorized plaintiffs to adjust complaints made under the guaranty, and consigned to plaintiffs repair parts with which to make the adjustments. It required plaintiffs to take out insurance against damages arising out of malpractice in the fitting of hearing aids, for protection of both plaintiffs and defendant, in a company which defendant designated. It had plaintiffs to insure the instruments sold against loss or damage and make report to it with regard thereto. It arranged for purchasers from plaintiffs to finance their purchases through a company with which it contracted. It had its representatives to visit plaintiffs and advise and direct plaintiffs as to the management of their business.

Plaintiffs were authorized to use the defendant's trade name "Maico" in connection with their business and did so use it, and defendant referred to them in correspondence as "Maico Hearing Service of Baltimore". They were listed in the telephone directory as "Maico Hearing Service."

Defendant relies upon the fact that it was not incorporated in Maryland and has never registered or qualified to do business in that state, that its office and factory are in Minnesota and that it has no warehouses and owns no property in

Maryland, except small amounts of new parts for hearing aids consigned to the plaintiffs until paid for, that none of its officers or directors live in Maryland and that the goods shipped to plaintiffs by defendant with the exception of the small amount of consigned parts represent outright sales of products, shipped f. o. b. defendant's factory in Minneapolis. Upon the evidence taken as a whole, however, it is impossible to escape the conclusion that, through the plaintiffs, defendant was advertising and selling its hearing aids in the State of Maryland, that the business was in effect done in defendant's name and that it was as completely controlled by defendant as it would have been if plaintiffs had been mere selling agents. Furthermore, there can be no doubt but that defendant actually participated in the sales made by plaintiffs, since the guaranty given in connection with the sale of a hearing aid was a part of the sale, and in making the guaranty the plaintiffs were unquestionably acting as agents of defendant. They were also acting as agents of defendant in adjusting complaints made under the guarantees.

▆ On these facts, we think that defendant was clearly doing business in the state within the meaning of the statute. In La Porte Heinekamp Motor Co. v. Ford Motor Co., D.C., 24 F.2d 861, and the very recent case of Thomas v. Hudson Sales Corp., Md., 105 A.2d 225, 228, in both of which jurisdiction was sustained, it was pointed out that, while it

did not constitute doing business within the state for a foreign corporation to make sales outside the state to distributors who carried on business therein, even though a district superintendent might visit them and advise with respect to selling policies, nevertheless such foreign corporation would be held to be doing business within the state if it went beyond this pattern and exercised substantial control over the business of the local distributor.[1] Here the defendant not only controlled the business policies of the distributor, but also regulated the details of the business almost as completely as if the distributor had been an agent in all respects. No one would contend that what was done did not constitute doing business by defendant if plaintiffs had been compensated on a commission basis instead of by discounts allowed from the sale price which defendant fixed; but the method of compensating the one who carries on the business cannot defeat jurisdiction when it appears that it was in reality defendant's business that was being carried on.

The case is not one where sporadic or occasional transactions are relied on to establish the doing of business within the state; but one in which it is shown that business of defendant was regularly carried on. See Dobie on Federal Procedure pp. 488–489 and opinion of Mr. Justice Peckham in Pennsylvania Lumberman's Mutual Fire Ins. Co. v. Meyer, 197 U.S. 407, 415, 25 S.Ct. 483, 49 L.Ed. 810. The only question is whether de-

---

1. In the last cited case the court said [105 A.2d 228]: "It appears that manufacturers of automobiles and other manufacturers who have followed more or less the following pattern in foreign states had been held not to be 'doing business' in those foreign states. A foreign corporation which has its principal business in another state, sells its products to distributors outside of that state, and the products are shipped f.o.b. with drafts attached. A district superintendent is employed whose territory includes foreign states. He visits distributors and dealers and advises them how to sell the products, how to keep up their stock of goods, and selects new dealers subject to the approval of the company. All contracts are executed by an officer of the corporation outside of the foreign state, the district superintendent having no authority to finally ratify any contracts. Among cases so holding are Holzer v. Dodge Bros., 1922, 233 N.Y. 216, 135 N.E. 268; Zimmers v. Dodge Bros., D.C.N.D.Ill.1927, 21 F.2d 152; Hinchcliffe Motors, Inc., v. Willys-Overland Motors, Inc., D.C.Mass. 1939, 30 F.Supp. 580; Johns v. Bay State Abrasive Products Co., D.C.1950, 89 F. Supp. 654; Harrison v. Robb Mfg. Co., D.C.1953, 110 F.Supp. 848."

fendant's connection with the business was established; and we think that it unquestionably was.

In Thomas v. Hudson Motor Corp., supra, which is controlling here, the Court of Appeals of Maryland said that prior decisions of that court were not helpful in the decision of the question there presented which is essentially the question before us, and the court proceeded to base its decision that the foreign corporation was "doing business" in the state within the meaning of that language as used in the Maryland statute largely upon the reasoning in Judge Soper's decision in La Porte Heinekamp Motor Co. v. Ford Motor Co., supra, and the later decisions of the Supreme Court of the United States in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. The court quoted the following passages from the opinion in the International Shoe Company case in the discussion of what constituted doing business:

"' * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'. * * Finally, although the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it, Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372, other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. * * * It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.' "

After quoting the foregoing passages, the court said of the International Shoe Company case:

"This case has been looked upon as announcing a new principle in determining whether a corporation was 'doing business' for the purpose of jurisdiction and that suit in the foreign state would not violate the due process clause."

The Court of Appeals also quoted the following passage from the opinion of Judge Soper in the case of La Porte Heinekamp Motor Co. v. Ford Motor Co., supra:

"'Summarizing this recital of the relations between the Ford Motor Company and the residents of Maryland, who handle its products, it appears that, while the company does not maintain within the state an agent with power to bind it by contract, nevertheless the actual supervision and control exercised by it through its traveling representative is almost as complete as if the dealers were its agents in all respects. The privilege of handling Ford cars and other products is evidently val-

uable, and, since the company may withdraw it at any time, it is not difficult to prevail upon the dealer to comply with the company's demands. The work of the local representative in this connection is of substantial benefit to the defendant. He not only stimulates the dealers to do their utmost in distributing the company's products, but incidentally secures information which enables the company to regulate its output in conformity to the demands of the public. Much of this he accomplishes through an almost daily contact with the various sellers of Ford products within the state; and, when the importance of the problem of distribution in this great business is considered, it becomes clear that the activities of the company within the state, as distinguished from those of the dealers, are not negligible.' "

In relying upon the decision in the cases of International Shoe Company v. State of Washington, supra, Perkins v. Benguet Consolidated Mining Co., supra, and La Porte Heinekamp Motor Co. v. Ford Motor Co., supra, when dealing with the question of doing business in the state within the meaning of the Maryland statute, the Court of Appeals of Maryland clearly held that the "doing of business" sufficient to satisfy the due process clause of the federal Constitution was sufficient to satisfy the jurisdictional requirements of Art. 23, sec. 88(a) of the Maryland Code; for it will be noted that the court held on the basis of those decisions, not only that suit in Maryland did not offend the due process clause, but also that the activities relied on constituted doing business within the meaning of the state statute. The court said:

"The exercise by Hudson Sales of the privilege of conducting activities within this State and the benefits

and protection of the laws of this State which it enjoys, appear to give rise to the obligations of one *who does business here* and that it is reasonable and just according to 'traditional notions of fair play and substantial justice' to hold that Hudson Sales is *'doing business'* in Maryland and that suit here does not offend the due process clause. International Shoe Company v. State of Washington, supra; Perkins v. Benguet Consolidated Mining Co., supra; Kilpatrick v. Texas & P. R. Co., supra [2 Cir., 166 F.2d 788]; State v. Ford Motor Co., 1946, 208 S.C. 379, 38 S.E.2d 242; Atlantic National Bank v. Hupp Motor Car Corp., 1937, 298 Mass. 200, 10 N.E.2d 131; Wilson v. Hudson Motor Car Co., D.C.Neb.1928, 28 F. 2d 347." (Italics supplied.)

■ This is in accord with the spirit of the statute, which is to extend the jurisdiction of the Maryland courts over suits by citizens of the state or contracts made within the state as far as constitutionally possible. Cf. Compania de Astral S. A. v. Boston Metals Co., Md., 107 A.2d 357.[2] It is in accord, also, with the sound public policy that foreign corporations engaging in business in a state either directly or through others should be subject to the jurisdiction of its courts, so that citizens of the state having claims arising out of such business may not be required to resort to the courts of an alien and distant jurisdiction to obtain justice. As said by Mr. Justice Black in his dissenting opinion in Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 669–670, 73 S.Ct. 900, 904, 97 L.Ed. 1331: "A large part of the business in each and every state is done today by corporations created under the laws of other states. To adjust the practical administration of law to this situation the Court in recent years has refused to be bound

**2.** In the case cited it was held that jurisdiction under Art. 23, sec. 88(d) might be based upon the making of a single contract within the state. Sec. 88(a) was not involved in the decision, but nothing was said therein which would in any wise limit the breadth of the decision under sec. 88(a) in Thomas v. Hudson Sales Corp., supra.

by old rigid concepts about 'doing business.' Whether cases are to be tried in one locality or another is now to be tested by basic principles of fairness, * *." In this case it is in accord with the basic principles of fairness that this defendant, which has carried on the business of selling its hearing aids in Maryland through the plaintiffs whose business it has controlled and dominated, should be held to answer to plaintiffs in the courts for alleged breach of contract in connection with that business.

For the reasons stated, the order of dismissal for lack of jurisdiction will be reversed and the case will be remanded for further proceedings not inconsistent herewith.

Reversed.