**WORLEY'S BEVERAGES, INCORPORATED, Plaintiff,**

v.

**The BUBBLE UP CORPORATION, a Foreign Corporation, Defendant.**

Civ. A. No. 1075.

United States District Court
E. D. North Carolina,
Raleigh Division.

Nov. 13, 1958.

Allen, Allen, Allen & Allen, Richmond, Va., and William I. Godwin, Selma, N. C., for plaintiff.

Smith, Leach, Anderson & Dorsett, Raleigh, N. C., for defendant.

STANLEY, District Judge.

This is an action to recover compensatory and punitive damages for alleged

breach of contract. It is alleged that the plaintiff is a corporation organized and doing business under the laws of the State of North Carolina, and that the defendant is a corporation organized under the laws of the State of Illinois with its home office in Peoria, Illinois, and transacting business in North Carolina.

Jurisdiction is based on diversity of citizenship, and service of summons was made on the defendant by serving the Secretary of State of the State of North Carolina, pursuant to North Carolina statutes for substituted service.

The defendant has made a special appearance and moved to dismiss the action, or in lieu thereof to quash the return of service of summons, on the ground that the defendant has not been properly served with process; that the defendant, an Illinois corporation, is not subject to service of process within the Eastern District of North Carolina; that the defendant was not and is not doing business in the State of North Carolina; and that this court has no jurisdiction of the defendant.

Rule 4(d)(7), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service on a foreign corporation " * * * is also sufficient if the summons and complaint are served * * * in the manner prescribed by the laws of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state". 28 U.S.C.A. § 1391(c) provides that any judicial district in which a corporation is doing business " * * * shall be regarded as the residence of such corporation for venue purposes". In view of these provisions, it is obvious that if the defendant was doing or transacting business in the Eastern District of North Carolina prior to the institution of this action, and service of summons was valid under the laws of the State of North Carolina, and meets the requirements of the due process clause of the United States Constitution, the defendant's motion should be denied.

There are two relevant North Carolina Statutes dealing with the service of process upon foreign corporations. Section 55-144, General Statutes of North Carolina, provides as follows:

"Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporation upon whom any process, notice, or demand in any suit upon a cause of action arising out of such business may be served."

Section 55-145, General Statutes of North Carolina, provides in pertinent part:

"(a) Every foreign corporation shall be subject to suit in this State, by a resident of this State * * * whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

"(1) Out of any contract made in this State or to be performed in this State; or

"(2) Out of any business solicited in this State by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the State; or

"(3) Out of the production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not

through the medium of independent contractors or dealers * * *.

    *    *    *    *    *    *

"(c) * * * In any case where a foreign corporation is subject to suit under this section and has failed to appoint and maintain a registered agent upon whom process might be served * * * then the Secretary of State shall be an agent of such corporation upon whom any process in any such cause of action may be served."

The validity of service of summons under the statutes referred to above, as well as the satisfaction of due process, must be determined to a large degree by a factual evaluation of the nature and extent of the defendant's business activities in the State of North Carolina. From affidavits, depositions and exhibits filed by the parties, the following facts have been established:

Bubble Up Corporation, the defendant, an Illinois corporation, is a manufacturer and distributor of a non-alcoholic soft drink concentrate called "Bubble Up". The defendant does not itself prepare a carbonated soft drink for reselling, but rather sells the concentrate to distributors who prepare the bottled drink from the concentrate. These bottlers and distributors are independent business-men, but generally they operate in a territory franchised to them by the defendant.

The defendant has in its employ two men who have in the past made periodic trips to North Carolina to promote the sale and distribution of Bubble Up. They are Edward A. Thomas, Franchise Manager for the Northeastern Division of the Bubble Up Corporation, and Howard J. Terwilliger, Vice-President and Assistant Division Manager of the Bubble Up Corporation. While both Thomas and Terwilliger have a large number of eastern states included in their territories, both men have made relatively frequent trips to North Carolina. The defendant has for some years previous to this action been selling its concentrate to distributors in North Carolina. Recently the defendant has stepped up its activities to "open up" North Carolina in areas where Bubble Up has not previously been distributed.

The distributors of Bubble Up were called upon by a representative of the defendant, usually Thomas, at least two or three times a year. On these calls the representative would check on the progress of Bubble Up in the area and assist and advise the local distributor in advertising and promoting Bubble Up. The interest of the defendant went beyond the mere selling of concentrate. It was continuously interested in insuring that the bottled drink made from the concentrate was properly prepared and that the sale of the soft drink was promoted properly at the distributor's level. Thomas indicated in his testimony that a large part of his responsibility was to help the individual distributors promote Bubble Up. Checks were made on the formula beng used by franchised distributors by sending samples back to the home office in Peoria, Illinois. The defendant would not sell the concentrate to just any soft drink distributor in a given territory, but only to a distributor which it had selected to operate under a franchise agreement. The selected distributor was given the privilege of using the trademark "Bubble Up". The defendant had a policy to reimburse franchise dealers in the form of no-charge concentrate for local advertising and promotional expenses. Such reimbursement was allowed to a maximum of 50% of the cash purchases of concentrate.

The plaintiff and defendant began negotiations in 1956. The plaintiff was interested in carrying an additional line in its bottling business. Thomas and Terwilliger both visited North Carolina in connection with the possibility of plaintiff becoming a distributor for Bubble Up. Some sort of satisfactory arrangement was arrived at between the plaintiff and the defendant, and the plaintiff began distributing Bubble Up in July, 1956. No franchise agreement was ever signed between the plaintiff and the defendant. However, on June 29, 1956, the defendant wrote to the plaintiff that it was "an

authorized Bubble Up bottler" and could use "the Bubble Up trade-mark" in "the territory we have agreed upon", and further that "your Bubble Up franchise is in the process of being prepared and will be sent to you within the next day or two". On June 15, 1957, the defendant terminated the permissive use of the trade-mark "Bubble Up" and this litigation ensued.

At the time the plaintiff began handling Bubble Up, Thomas and Terwilliger both spent some time with the plaintiff in helping promote the soft drink. Thomas advised as to the proper preparation of the drink. He also made calls on the various retailers who would be served by the plaintiff. Thomas contacted chain grocery stores and service stations to investigate the possibility of their handling the Bubble Up drink sold by the plaintiff. Thomas personally placed an order for a 42½" advertisement to run in the Raleigh News and Observer in connection with the initial promotion campaign for the plaintiff.

After the defendant cancelled the trade-mark privilege with the plaintiff, the Capital Coca-Cola Bottling Company of Raleigh, North Carolina, was given the right to distribute under the Bubble Up trade-mark in the area formerly served by the plaintiff. The deposition of C. L. Thomson, Manager of Capital Coca-Cola Bottling Company, shows that the territory of a distributor was to be exclusive and a distributor was not to operate under a franchise in an area where there was already a distributor under the Bubble Up trade-mark.

In summary, there is no question but that the defendant had representatives who made regular calls in North Carolina, and that defendant did more than merely sell a product to buyers in this State. Its representatives were more than order takers. Defendant gave distributors an exclusive area in which to distribute a beverage made from its concentrate. Its representatives advised the distributors as to methods of production and proper merchandising. It would allow a credit for local advertising expenses to its dis-

tributors based on the amount of concentrate sold to them. It supplied advertising format and materials and advised the distributors as to what it thought was the most effective advertising methods. It would have representatives in North Carolina when a distributor was introducing Bubble Up into a new area to assist in the initial promotional campaign. It was interested in insuring that distributors prepared the beverage according to a formula, even though it only sold the concentrate base.

The questions for determination are (1) whether, under the factual situation here presented, it would be offensive to the due process clause of the Constitution of the United States to sustain jurisdiction, and (2) whether the service of summons is valid under any of the applicable state statutes. These questions will be discussed in the order mentioned.

The leading case in the area of state court jurisdiction over foreign corporations is International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95. In that case the United States Supreme Court stated the rule to be that " * * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend *'traditional notions of fair play and substantial justice.'* " (Emphasis supplied.) This case has generally been viewed as liberalizing and clarifying the "doing business" or "presence" tests previously recognized. In construing the term "presence" the court stated:

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been *continuous and systematic,* but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given * * * Conversely it has been generally recognized that the casual presence of

the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." (Emphasis supplied.)

The International Shoe case has been followed by a series of cases that further liberalize jurisdiction over foreign corporations. Travelers Health Association v. Commonwealth of Virginia ex rel. State Corp. Comm., 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. In all these cases the issue involved was whether service of process under the laws of a particular state, as applied to a given factual situation, satisfied due process. The Supreme Court did not determine the validity of service of process under state law but only held that such service would not be unconstitutional if permitted by state law.

In Erlanger Mills, Inc., v. Cohoes Fibre Mills, Inc., 1956, 239 F.2d 502, the Fourth Circuit had occasion to apply the International Shoe case to a North Carolina statute involving service of process. In that case an order for rayon garnet was placed with a New York corporation in New York and accepted there. The goods were sold f. o. b. New York to the plaintiff, a North Carolina corporation. The plaintiff complained that the yarn was defective and the general manager of the New York corporation came to North Carolina to discuss the complaint. The plaintiff conceded that the defendant had never done any business in North Carolina prior to this transaction. In holding jurisdiction invalid under the facts of this case, the Fourth Circuit pointed out that in the International Shoe case, and cases following, the corporations involved were carrying on a part of their business within the state involved, continuously and systematically, and this could not be said of the defendant in the Erlanger Mills case. In discussing the scope of the North Carolina statute under which

service of process was attempted, the court said [239 F.2d 509]:

"If the due process clause is not effective to restrain such extensions of local power, then the federal system is likely to be transformed into something very different from anything we have known."

The court was apparently concerned with the implications of sustaining jurisdiction over a foreign corporation on the basis of a single transaction between that corporation and a local plaintiff. The facts of this case show that even under the liberalizing decisions following International Shoe, there is a limit to how far jurisdiction may be carried.

■ Here, however, we have a factual situation vastly different from the Erlanger Mills case. Here the defendant has a long record of periodic contacts in North Carolina. Its representatives regularly entered North Carolina to further the promotion and sales of its products by distributors. The defendant not only was active in furthering its sales of concentrate, but was actively assisting its distributors in their sales of the bottled drink. Obviously, the more the representatives of the defendant assisted the local distributors in selling the bottled drink, the more it stood to gain in the form of sales of concentrate. Certainly these facts are far different from a single transaction by the defendant as in Erlanger Mills. Its activities in North Carolina were of the "continuous and systematic type" referred to in Erlanger Mills. It is reasonable to say that the defendant had "minimum contacts" in North Carolina, and it is difficult to see how sustaining jurisdiction could offend one's "traditional notions of fair play and substantial justice". It is concluded, therefore, that the extensive and continuous business of the defendant in the State of North Carolina was clearly sufficient to satisfy the demands of due process.

■ We turn now to the question of whether the purported service of process in this case is valid under any of the ap-

plicable North Carolina Statutes. As pointed out by the defendant in its brief, it is entirely possible for service of process under a given factual situation to meet the requirements of due process and still not be valid under state statutes. In other words, a state does not have to provide for service of process on foreign corporations to the fullest extent permitted by due process.

Looking to the North Carolina Statutes quoted earlier, it is obvious that G.S. § 55–144 requires more "contacts" in North Carolina than G.S. § 55–145, which provides for service on foreign corporations even though not transacting business in this state. It should further be borne in mind that prior to 1955, the statute comparable to the present G.S. § 55–144 required that a foreign corporation be "doing business" in this state, and that most of the decisions of the North Carolina Supreme Court are under this earlier statute. However, it is generally considered that changing the statute from "doing business" to "transacting business" only had the effect of liberalizing the statute.

■ In Radio Station WFMR, Inc., v. Eitel-McCullough, Inc., 1950, 232 N.C. 287, 59 S.E.2d 779, 781, the defendant was a foreign corporation engaged in the manufacture and wholesale distribution of filament tubes to be used in radios. Defendant engaged six dealer representatives in North Carolina who also dealt in the sale of other manufactured products. The defendant also had a sales representative who traveled in North Carolina to help promote sales, and had an agent who, among his other duties, investigated complaints made by customers. The defendant further employed an agent to facilitate collection of delinquent accounts owed by dealer representatives. The North Carolina Supreme Court reversed the ruling of the lower court and held that service of summons could not be sustained since the corporation was not "doing business" in North Carolina under the provision of G.S. § 55–38 (similar to the present G.S. § 55–144). The court pointed to the language in Ruark v.

Virginia Trust Co., 1934, 206 N.C. 564, 174 S.E. 441 where it was said: "The expression 'doing business in this State,' as used in C.S. § 1137 (now G.S. § 55–38), means engaging in, carrying on, or exercising, in this state, some of the things, or some of the functions, for which the corporation was created." The court further pointed to Plott v. Michael, 1939, 214 N.C. 665, 200 S.E. 429, where it was held that service of process on the Secretary of State was invalid where the only "presence" in the state was a traveling salesman who took orders subject to approval at the home office. In summary, the court stated: "We think that this succinctly states the proposition at hand. Mere incidental service not substantially of the character of the business carried on by the defendant is not of the nature to subject it to the control and regulation of the state law or to invoke state law for its protection or to bring it within the pale of the statute which makes 'doing business' in this state essential to its application."

In Troy Lumber Co. v. State Sewing Machine Corp., 1951, 233 N.C. 407, 64 S.E.2d 415, service was had on a purported agent of defendant corporation. The defendant had contracted with plaintiff, a North Carolina corporation, to manufacture sewing cabinets for it. The defendant had agents in North Carolina who were to inspect the cabinets at the factory and had authority to reject or accept the manufactured product. While the applicable statute pertained to service on an agent and not service on the Secretary of State, the court had occasion to discuss the concept of "doing business", and cited from Commercial Ins. Trust Co. v. Gaines, 1927, 193 N.C. 233, 136 S.E. 609, 610, the following:

"It has been generally held that a foreign corporation cannot be held to be doing business in a state and therefore subject to its laws, unless it shall be found as a fact that such corporation has entered the state in which it is alleged to be doing business, and there transacted, by its officers, agents, or other persons au-

thorized to act for it, the business in which it is authorized to engage by the state under whose laws it was created and organized. The presence, within the state, of such officers, agents, or other persons, engaged in the transaction of the corporation's business, with citizens of the state, is generally held as determinative of the question as to whether the corporation is doing business in the state."

The court then went on to find that the defendant corporation was carrying on some of the functions for which it was created in North Carolina, and sustained the validity of service.

In the recent case of Harrington v. Croft Steel Products, 1956, 244 N.C. 675, 94 S.E.2d 803, the defendant sold goods in North Carolina through commission agents and was being sued by one of these agents for his commissions. The sales of defendant's products in North Carolina amounted to a substantial dollar volume. The defendant also delivered the goods to North Carolina in its own trucks driven by its own drivers who delivered the goods to its customers and took receipts for the delivery. The goods were manufactured out of the state. The trial court found the service on the Secretary of State valid, both on the basis of "doing business" in North Carolina (under what is now G.S. § 55–144), and the fact that the cause arose out of a contract to be performed in this state and the manufacture and distribution of goods with the reasonable expectation they were to be used in this state (under what is now G.S. § 55–145). The North Carolina Supreme Court did not consider the constitutionality of service under the latter findings since it was satisfied the defendant was "doing business" in North Carolina.

In Putnam v. Triangle Publications, Inc., 1957, 245 N.C. 432, 96 S.E.2d 445, 453, the defendant, a foreign corporation, published magazines in Philadelphia and sold them to eighteen independent wholesale dealers in North Carolina. Title to the papers and magazines passed upon delivery to a common carrier in Philadel-

phia. No office was maintained in North Carolina. However, the defendant did have three promotional representatives who entered North Carolina two to five times a year to promote sales to newsdealers and television dealers. The court held that under the facts of the case the defendant corporation did not have such "minimum contacts" with the State of North Carolina to satisfy the due process clause of the Constitution and that if G.S. § 55–38.1(a)(3) (now G.S. § 55–145 (a)(3)) were held to be applicable to the facts of that case, same would be unconstitutional. As to transacting business, the court said:

> " * * * The occasional visits of agents of the defendant to the State as sales promotion representatives, upon the facts as found by the judge, are not deemed sufficient to render the defendant liable to suit in the State Courts. Upon all the facts found by the judge, he correctly concluded that defendant has not transacted or done business in the State of North Carolina."

In a case decided the same month as the Triangle Publications case, the North Carolina Supreme Court, in Painter v. Home Finance Co., 1957, 245 N.C. 576, 96 S.E.2d 731, sustained the validity of service where the defendant foreign corporation had its agent enter the state to repossess an automobile, and the plaintiff alleged a tortious retaking. Jurisdiction was sustained under sub-section (a)(4) of G.S. § 55–145 as arising out of "tortious conduct" in this state. The finding of the trial court that the conduct of defendant constituted "doing business" was held to be unnecessary by the court since the statute did not require such. This language is of interest in view of the fact that the court in the Triangle Publications case expressed doubt as to the constitutionality of sub-section (a)(4). No mention of Triangle Publications was made in the Home Finance case.

The Supreme Court of North Carolina has only ruled that Section (a)(3) of G.S. § 55–145 was invalid on the basis of the facts presented. It has not held that un-

der a different set of facts the statute could not be constitutionally applied. Certainly the activities in this case were far more extensive than those of the defendant in the Triangle Publications case. Moreover, it seems reasonable that even under a restricted interpretation, the provisions of G.S. § 55–145 could be constitutionally applied to the facts of this case.

As has been set out in most of the cases dealing with this subject, we are confronted with a question of fact which must be determined largely according to the surrounding circumstances. No definite and precise rule can be applied to cases of this type.

■■ Measuring the facts found in the present case by the principles above referred to, it is abundantly clear that the defendant was "transacting business" in North Carolina, as referred to in G.S. § 55–144, and that validity of service of process should also be sustained under G.S. § 55–145 for the reason that the litigation grows out of (1) a contract made in this state and to be performed in this state, (2) business solicited in this state by the defendant, and (3) the production, manufacture and distribution of goods by the defendant with the reasonable expectation that those goods were to be used or consumed in this state.

It would offend all "traditional notions of fair play and substantial justice" to hold that defendant could come to North Carolina and enter into a contract to be performed in this state, and ship its goods into this state for distribution and consumption, and then require the plaintiff to go to Illinois to sue for a breach of the contract. The defendant enjoyed the privilege of conducting business in the State of North Carolina, and the benefits and protection of its laws, and since the obligations here sought to be enforced are connected with the defendant's activities within this state, the defendant ought to be required to respond to this suit. International Shoe Co. v. State of Washington, supra.

It is concluded that service of process in this case was valid and should be sustained, and that the defendant's motion should be denied.

Counsel for the plaintiff will prepare and present to the court an order in conformity with this opinion.