Chas. D. LONG and Samuel H. Liberman, Trustees, and Paul E. Hord and Jane S. Hord, Appellants,

v.

VICTOR PRODUCTS CORPORATION, a Corporation, Appellee.

No. 16780.

United States Court of Appeals Eighth Circuit.

Dec. 27, 1961.

Rehearing Denied Jan. 22, 1962.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

This is an appeal from the dismissal of the plaintiffs' complaint on the ground of lack of jurisdiction over the defendant in the Eastern District of Missouri.

The plaintiffs are individual citizens of Missouri. The defendant is a Maryland corporation not formally authorized to do business in Missouri. Paul E. Hord, one of the plaintiffs, on November 30, 1959, executed a contract in Maryland with the defendant. A month later Hord executed, also in Maryland, an assignment of certain cash sums due or to become due to him under that contract. This assignment ran in favor of Chas. D. Long and Samuel H. Liberman, as trustees for Jane S. Hord. The defendant consented to this assignment in writing in Maryland.

The present action is one by Hord, his assignees, and the trust beneficiary. They seek a judgment for an amount claimed to be due under the contract and for damages for failure to perform the contract; they also seek related injunctive relief.

The action was begun in federal court and is not one removed from a state court.[1] Service of the summons and complaint in the action was effected by the United States Marshal on R. J. Funkhouser and Roy Small, Chairman of the Board and a Vice President, respectively, of the defendant corporation, while they were at the Chase Hotel in St. Louis, Missouri, on October 20, 1960.

After the institution of the action, the plaintiffs served interrogatories upon the defendant by mail. Before answering, the defendant moved to dismiss the action for lack of jurisdiction over it and to quash the service. A little later on the same day the defendant filed objections to some of the interrogatories and moved to extend the time for filing answers to the remaining ones. Time was allowed. Answers to the unoffensive interroga-

Robert H. Batts, St. Louis, Mo., for appellants. Rassieur, Long & Yawitz, St. Louis, Mo., were with him on the brief.

Robert E. Keaney, St. Louis, Mo., for appellee. Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton and William T. King and Dulin & King, St. Louis, Mo., were with him on the brief.

1. The situation encountered in Polizzi v. Cowles Magazines, 1953, 345 U.S. 663, 665, 73 S.Ct. 900, 97 L.Ed. 1331, is thus not present here.

tories were filed. The hearing on the motion to dismiss then took place. At that hearing the plaintiffs withdrew those interrogatories to which objections had been made.

▉ In the trial court the plaintiffs argued that the defendant was engaged in activities in the Eastern District of Missouri, sufficient to subject it to judicial process there and that, in any event, the defendant waived its objections to jurisdiction by the filing of its motion for additional time in which to answer interrogatories. Both issues were decided adversely to the plaintiffs. Waiver does not appear to be urged on this appeal.[2]

The answers to the interrogatories and the other evidence presented at the hearing on the motion to dismiss revealed the following:

1. The defendant is engaged in the manufacture of refrigeration equipment. Its main plant is at Hagerstown, Maryland. It has one other at Berkeley Springs, West Virginia.

2. In addition to Maryland, the defendant has certificates of authority to do business in West Virginia and Pennsylvania.

3. The defendant has no certificate of authority to do business in Missouri and has received no request from Missouri to obtain one.

4. The defendant has salesmen who solicit orders in the field throughout the United States. These orders are sent to Hagerstown for acceptance or rejection. If an order is accepted, shipment is made f.o.b. Hagerstown or Berkeley Springs, as the case may be.

5. The defendant has one such salesman, James F. Purcell, in Missouri. He resides at Springfield and has the title of district sales manager. His territory consists of Missouri, six other states, and northern Michigan. He solicits orders in each of those states. He does not have authority to bind the defendant by contract. He does not service any of the defendant's products.

6. Purcell's compensation is on a commission basis. He is paid from Maryland. His instructions emanate from Maryland.

7. The defendant does not maintain an office, warehouse, or stock of goods in Missouri. It has no telephone, bank account, registered agent, or registered office there. It neither owns nor rents Missouri real estate. It maintains no permanent display or exhibit room in that state. It has paid no taxes to the State of Missouri.

8. The defendant employs no serviceman or mechanic who does work in Missouri. It does warrant the parts of its products. Replacement is effected at the factory at Hagerstown with the understanding that the defective part is shipped there freight paid.

9. The defendant sold and shipped products to forty purchasers in St. Louis and other Missouri points within the two years preceding December 9, 1960. These shipments were made upon orders mailed or telephoned to the defendant or sent in to it by Purcell.

10. The defendant displayed certain of its manufactured refrigeration products at four separate meetings, all in St. Louis, in the period from October 1958 through October 1960. Specifically, these were the Seven-Up International Convention, October 9–11, 1958; the International Soft Drink Exposition, November 16–19, 1959; the Dr. Pepper Regional

2. That issue in any event would have to be decided against the plaintiffs. The defense of lack of jurisdiction over the person was validly raised by the earlier and pending motion to dismiss and was not waived. Rule 12(b), F.R.Civ.P., 28 U.S.C.A. See Orange Theatre Corp. v. Rayherstz Amusement Corp., 3 Cir., 1944, 139 F.2d 871, 874, cert. den. sub. nom. Orange Theatre Corp. v. Brandt, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573; Kerr v. Compagnie De Ultramar, 2 Cir., 1958, 250 F.2d 860, 864; Blank v. Bitker, 7 Cir., 1943, 135 F.2d 962, 966; Kamen Soap Products Co. v. Struthers Wells Corp., S.D.N.Y., 1958, 159 F.Supp. 706, 708; C. S. Foreman Company v. H. B. Zachry Company, W.D.Mo., 1955, 127 F. Supp. 901, 902; Heiss v. Nielsen, D.Neb., 1955, 132 F.Supp. 541, 544.

meeting, November 20–21, 1959; and the Seven-Up International Developers meeting, October 21–22, 1960. Purcell and a number of high ranking officers and sales representatives of the defendant attended those meetings. Except for Purcell, all these men came from outside Missouri.

11. The October 1960 meeting was a convention at the Chase Hotel of Seven-Up bottlers or "developers". It was arranged and sponsored by the Seven-Up Company for those developers. About fifty exhibitors also attended. Their attendance was by invitation. The defendant was invited because it was a manufacturer of approved products on which the display of the Seven-Up trademark and slogans was authorized. The defendant did not pay for the exhibit space it occupied; that cost was borne by the Seven-Up Company. The defendant paid the cost of transporting its products to the exhibit area.

12. The particular units which were on display at the meeting in October 1960 were sold at that convention to seven separate purchasers from states outside Missouri. Those units were shipped to the buyers direct from the hotel instead of being first returned to the factory. These sales did not require approval from Maryland. Invoices for the sales then issued from Hagerstown. Similar sales could have been made at the earlier meetings.

13. The defendant had an exhibit at the 1958 Seven-Up Convention in St. Louis. That also was by invitation and the Seven-Up Company bore the expense of the exhibit area.

14. At the 1960 meeting, Small himself was in attendance at the defendant's booth, described and priced the units on display, had in evidence two rather elaborate sales brochures bearing the legend "Prepared especially for Seven-Up Developers" and describing and illustrating the defendant's products with Seven-Up designations, and made at least one reference to a "prospective customer" in his remarks to visitors.

15. The presence of Funkhouser and Small in St. Louis in October 1960 was not in connection with the contract and assignment which are the subject matter of the present action.

16. The purpose of the defendant's representatives attending the four St. Louis meetings was to give bottlers the opportunity to see examples of the defendant's products and to promote their sale.

The plaintiffs bottom their claim of jurisdiction here primarily on 28 U.S. C.A. § 1391(c).[3] This is the venue statute which authorizes a suit against a corporation in the judicial district where it "is doing business". Consideration of the question whether this defendant was doing business in the Eastern District of Missouri so as to subject it there to service of process leads us at once, and as usual, to the general tests prescribed by the Supreme Court in International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316–318, 66 S.Ct. 154, 158, 90 L.Ed. 95: minimum contacts with the forum so that maintenance of the suit is reasonable and does not offend "traditional notions of fair play and substantial justice", or activities which are not only continuous and systematic but which give rise to the liability sued on, or continuous corporate operations within the state so substantial as to justify suit against it there on causes of action arising from dealings distinct from those activities. The court specifically said, p. 319 of 326 U.S., p. 159 of 66 S.Ct.:

> "It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its

3. "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure."

It then went on to emphasize, p. 320, 66 S.Ct. 154, for that particular case (a) the corporation's systematic and continuous activities over a period; (b) their result in a large volume of interstate business; (c) the corporation's receipt of the benefits and protection of the laws of the state; (d) the fact that the obligation sued upon arose out of those very activities; and (e) that the enforcement of the obligation in the local forum was reasonable and just. See also Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 445–447, 72 S.Ct. 413, 96 L.Ed. 485; Young v. Hicks, 8 Cir., 1957, 250 F.2d 80, 84.

 It is, of course, long settled that jurisdiction over a foreign corporation is not acquired merely by the service of process upon an executive officer temporarily present in the state or district even though he is there on corporation business. James-Dickinson Co. v. Harry, 1927, 273 U.S. 119, 122, 47 S. Ct. 308, 71 L.Ed. 569; Bank of America v. Whitney Bank, 1923, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594; Collar v. Peninsular Gas Company, Mo.Sup., 1956, 295 S.W.2d 88, 90. Yet it has been noted that there is a "clearly discernible" trend in favor of expansion of the concept of jurisdiction. Observations to this effect appear both in cases originating in state courts, McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223; Hanson v. Denckla, 1958, 357 U.S. 235, 250–251, 78 S.Ct. 1228, 2 L.Ed.2d 1283, and in cases originating in federal courts, Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 516, 146 A.L.R. 926; Worley's Beverages, Inc. v. Bubble Up Corporation, E.D.N.C., 1958, 167 F.Supp. 498, 503.

 The plaintiffs concede, however, that it is still the law that "mere solicitation" within a state does not of itself render the foreign corporation vendor amenable to suit within the state. Green v. Chicago, Burlington & Quincy Ry. Co., 1907, 205 U.S. 530, 533–534, 27 S.Ct. 595, 51 L.Ed. 916; Hayman v. Southern Pacific Company, Mo.Sup., 1955, 278 S.W.2d 749, 751; Young v. Hicks, supra, 8 Cir., 1957, 250 F.2d 80, 84; Shannon v. Brown & Williamson Tobacco Corp., W.D.Mo., 1958, 167 F.Supp. 493. Compare Eli Lilly & Co. v. Sav-On-Drugs, 1961, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288.

 Plaintiffs argue that it takes very little more than pure selling activity for a defendant vendor corporation to be legally found in a state or district and subject to process there. They cite, in particular, Frene v. Louisville Cement Co., supra, 1943, 77 U.S.App.D.C. 129, 134 F. 2d 511, 515, 146 A.L.R. 926; Republic Supply Corporation v. Lewyt Corporation, E.D.Mich., 1958, 160 F.Supp. 949, 951; and Kneeland v. Ethicon Suture Laboratories, 1953, 118 Cal.App.2d 211, 257 P.2d 727, 736. They then argue that the defendant here has engaged in something more than solicitation of interstate orders; that there are "periodic physical presence of its chief officers in Missouri for sales activities, and sales and deliveries in Missouri"; that all this constitutes "solicitation plus"; and that defendant is therefore within Missouri for jurisdictional purposes.

Each case must stand on its own facts. International Harvester Co. of America v. Commonwealth of Kentucky, 1914, 234 U.S. 579, 583, 34 S.Ct. 944, 58 L.Ed. 1479; St. Louis S. W. Ry. Co. of Texas v. Alexander, 1913, 227 U.S. 218, 227, 33 S.Ct. 245, 57 L.Ed. 486; Perkins v. Benguet Consol. Mining Co., supra, p. 445 of 342 U.S., p. 413 of 72 S.Ct., 96 L.Ed. 485; People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587. Because of this, and as was intimated in International Shoe, supra, the reported cases cannot be said to create a clear and definable line

marking the distinction between the presence and the absence of jurisdiction. We feel, however, that, upon the record before us, the district court was right in its conclusion that jurisdiction was not obtained over this corporate defendant by the service of process upon its officers in St. Louis in October 1960. We reach this conclusion, as did the district judge, because of our impression that while there may have been something more here than "mere solicitation" by the defendant in Missouri, the added element is not of the kind or degree which constitutes "solicitation plus" under Frene, Republic Supply, Ethicon Suture and similar cases. Purcell's activities, apart from his attendance with others at the St. Louis meetings, constituted solicitation and nothing more. Jurisdiction would have to arise, then, because of the four St. Louis meetings and the attendance and activities there. We regard as especially significant the very nature of the attendance of defendant's representatives at those meetings: in response to an invitation from the sponsor, and at the sponsor's primary expense, to a manufacturer whose refrigeration units had met acceptance for the dispensation of the sponsor's product. The four meetings themselves were two-to-four day soft drink conventions held within a period of twenty-five months. Of course, the defendant foresaw possible benefit to itself in the attendance of its officers and in the opportunity to enhance the market for its products and its acquaintanceship and reputation among bottlers. These, however, are activities quite different from the continuous and systematic and substantial activities stressed in the cases where jurisdiction has been held to exist. That the particular display units were sold right from the St. Louis hotel at the 1960 meeting to non-Missouri purchasers is, we hold, no more than incidental and is not an activity which, by itself or coupled with the other activities of the meeting and Purcell's soliciting, is of a consequence or character sufficient to confer jurisdiction here.

This case falls short in the strength of its facts from those of other cases which the plaintiffs specifically urge upon us: Lindner v. Plastic Toys, City Court of New York, 1949, 96 N.Y.S.2d 513 (defendant's president and sales manager occupied a New York City hotel room having the defendant's business sign displayed on the door during a 13 day toy sale; the room displayed samples and prices and orders were taken by the president from anyone willing to enter into business dealings with the defendant); Perkins v. Benguet Consol. Mining Co., supra, 342 U.S. 437, 72 S.Ct. 413, 96 L. Ed. 485 (Philippine corporation during the Japanese occupation temporarily carried on in Ohio a continuous and systematic, although limited, part of its general business consisting of directors' meetings, banking, payment of salaries, purchasing, and the like); Orange-Crush Grapico Bottling Co. v. Seven-Up Company, N.D.Ala., 1955, 128 F.Supp. 174 (defendant's representatives made regular and frequent trips to Alabama and engaged in conducting sales meetings and schools, demonstrating sales techniques, placing advertising, making door-to-door sampling and sales, inspecting plants and negotiating agreements); Worley's Beverages, Inc. v. Bubble Up Corporation, supra, E.D.N.C., 1958, 167 F.Supp. 498 (defendant's officers made periodic trips to North Carolina, advised local distributors in advertising, production and merchandising, investigated and checked the formula used by franchised distributors, and supplied advertising format); Dahl v. Collette, 1938, 202 Minn. 544, 279 N.W. 561 (solicitation accompanied within the state by compromise and adjustment of disputes with customers and the maintenance of display and demonstration rooms at conventions); Atlantic Nat. Bank of Boston v. Hupp Motor Car Corporation, 1937, 298 Mass. 200, 10 N.E.2d 131 (automobile manufacturer's resident agent took over, in place of disaffected distributor, the presentation of defendant's product at an automobile show, paid for the facilities there, arranged for delivery of automobiles and executed new dealers' contracts); Kneeland v. Ethicon Suture Laboratories, supra, 1953, 118 Cal.App.2d 211, 257 P.2d 727, (agents traveled

through the state developing business, making contacts with physicians and hospital officials, promoting products, attending conventions, displaying products and, as the court said, "doing just about everything full-fledged sales agents might do except the taking of orders, the delivery of goods, and the collection of the sales price").

While, as we have noted, these cases are often close, and the line defining the limit of jurisdictional due process is not always easy to locate, we are in agreement with the district court's conclusion that, under the circumstances present here, jurisdiction was lacking. The dismissal of the plaintiffs' complaint is therefore affirmed.