**J. Wesley SNYDER, d/b/a Snyder's Auto Sales, Plaintiff,**

v.

**EASTERN AUTO DISTRIBUTORS, INC., a corporation, Defendant.**

**Civ. A. No. 4675.**

United States District Court
W. D. South Carolina,
Greenville Division.

March 10, 1965.

Leo H. Hill, Carter & Hill, and Theodore A. Snyder, Jr., Wofford & Snyder, Greenville, S. C., for plaintiff.

W. Francis Marion, Haynsworth, Perry, Bryant, Marion & Johnstone, Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Defendant filed dual motions under Rule 7, Rules of Civil Procedure, United States Courts:

### I

"The Defendant moves to quash service upon the following grounds: That the person upon whom the purported service of Summons and Complaint was served was not an Officer, a Director of the corporation, nor was he a person upon whom service was proper and authorized within the meaning of the Statutes relating to the Service of the Summons and Complaint."

### II

"The Defendant moves to dismiss the Complaint of the Plaintiff upon the following grounds: That the Defendant is not doing business within the Western District of South Carolina and has no agent for the purpose of Service and Process in said Western District, nor does it have offices or agent within said district. That the Title 15, Section 12.22 is not applicable in that it does not enlarge or in any way alter the statutes relating to the method of obtaining service."[1]

Undisputed facts reveal that defendant is a Virginia business corporation, plaintiff a South Carolinian. Before termination[2] of plaintiff's relationship

---

1. 15 U.S.C.A. § 1222: "Authorization of suits against manufacturers; amount of recovery; defenses

 "An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States *in the district in which said manufacturer resides, or is found, or has an agent,* without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith. Aug. 8, 1956, c. 1038 § 2, 70 Stat. 1125." [Emphasis added].

2. On Feb. 21, 1964 H. W. Smith, Vice President of defendant wrote to Snyder:
 "Please take notice that the undersigned elects to terminate and does hereby terminate, effective thirty (30) days from delivery hereof to you, any and

plaintiff was Greenville, S. C., dealer for Renault and Peugeot automobiles, parts, etc. for which defendant had distributorship in South Carolina and other eastern states. Eastern had no place of business, agent, office, or property in South Carolina, but employed one James F. Sharkey, Jr., an admitted resident of Charlotte, North Carolina, as District Sales Manager, he having in his territory the Western part of South Carolina which included Greenville; he not only obtained orders but was general liaison agent and coordinator between the dealers and Eastern.

After termination,[3] Eastern wrote plaintiff on May 18, 1964:

"On April 20, 1964, I sent you a letter requesting that you have your Renault and Peugeot signs crated and shipped to Norfolk, and advising that upon their receipt we would make a final accounting with Snyder's Auto Sales. As of this date, the signs have not been received.

"We would also appreciate your advising us when our man might visit your dealership for the purpose of inspecting the vehicles which you have for return and repurchase in accordance with my letter to you of March 30, 1964. We stand ready to pick up the vehicles which our man approves for return at anytime.

"Our parts warehouse advises me that they have opened the cases which you have returned and inventoried the parts contained therein.

In round figures the acceptable parts amount to approximately $1900, and the obsolete items which cannot be repurchased amount to approximately $100. Please advise this office what disposition is to be made of these non-returnable parts.

"When the vehicles have been returned, and the signs have been shipped to Norfolk, a final accounting can be made with your dealership. We are most anxious to accomplish this end, and would appreciate your cooperation in this regard."

Again on June 2, 1964:

"Please refer to my letter of May 18, 1964, which you received on May 21, 1964, according to certified receipt #968642, in which I asked you to advise me when our representative might visit your dealership for the purpose of inspecting the vehicles which you have for return, and in which I asked that you ship the genuine Renault and Peugeot signs to Norfolk so that we might make a final accounting with your dealership. As of this date I have not received an answer.

"I have in my possession a credit memorandum in the amount of $2035.38 made out to Snyder's Auto Sales for the parts which you returned, however, I am holding this memo pending your compliance with my requests in my letter of May 18th

all agreements which the undersigned has at any time entered into with you, if and to the extent now in effect.

"This action comes as a result of substandard performance by your company for many months in the sale of Renault and Peugeot vehicles as against potential.

"Please be advised that, until a replacement dealer is appointed, or for a reasonable length of time until further notice, Eastern Auto Distributors, Inc. will continue to offer you the regular dealer discount on parts purchases and will honor warranty claims as in the past for work done on customer's vehicles. At the effective time of this termination,

Eastern Auto Distributors, Inc. will repurchase any new and unused vehicles of current model which might be in your inventory at the then current dealer net cost. In addition, Eastern Auto Distributors, Inc. will repurchase official Renault and Peugeot signs in usable condition at 50% of their original cost to you. At the time of repurchase of parts, they will be repurchased at the then current dealer net price less 10% for handling."

3. Plaintiff's affidavit approving the motion stated: "After my relationship with Eastern as a Renault and Peugeot dealer had been terminated, we continued to have correspondence."

referred to above. It is in your best interest to cooperate at this time, since we have repeatedly advised you that we stand ready to make our final settlement immediately upon your compliance with our reasonable requests.

> "Very truly yours,
> "EASTERN AUTO DISTRIBUTORS, INC.

"HWS:mcs

"Bcc: Mr. S. F. Blocker

> "Mr. J. F. Sharkey"

On June 8, 1964 plaintiff replied:

"I will be glad for your representative to call upon us; and if you will please advise me what time to expect him, I shall arrange to be in town to meet him.

> Sincerely,
> SNYDER'S AUTO SALES"

On June 19, 1964 Sharkey telephoned plaintiff from a point in North Carolina, arranged to meet with Snyder the same afternoon at plaintiff's place of business in Greenville. Upon arrival he was served with Summons and Complaint in this action by a United States Marshal for the Western District of South Carolina.

Was Sharkey a proper person upon whom to effect service under the terms of the statute relied on? (Note 1, supra.)

Not questioned here is the inclusion of Eastern in the term "manufacturer" within the meaning of the statute. Suffice it to say that if same were contested the court would have to make further inquiry into, among other matters, the franchise agreement between Eastern and its foreign manufacturer or supplier.[4] No issue thereabout is before the Court. We are fortunate to have, on this subject, the able definitions included by Congress under provision of 15 U.S.C. § 1221.[5]

The Court's pursuit must next engage on the question of whether the Western District of South Carolina is a judicial district "in which said manufacturer resides", within the meaning of the Statute (Section 1222). Since the passage of the legislation in 1956 no issue of such definition has been passed upon. The legislative history [6] recites:

> "Section 1(c) has been amended to define an automobile dealer as any concern 'resident in the United States or in any Territory thereof or in the District of Columbia,' operating under the terms of a written franchise and engaged in the sale of passenger cars, trucks, or station wagons. This amendment limits the right to bring suit in the district courts of the United States to dealers resident in the United States or its Territories. The record before the committee was concerned only with coercive practices by manufacturers with respect to their United States dealers. The committee has no information with respect to such practices involving dealers situated in foreign countries."

---

4. See Barney Motor Sales, etc. v. Cal. Sales, Inc., etc., 178 F.Supp. 172.

5. Which reads in part: "(a) The term 'automobile manufacturer' shall mean any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation which acts for and is under the . control of such manufacturer or assembler in connection with the distribution of said automotive vehicles. (b) The term 'franchise' shall mean the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of the parties to such agreement or contract. (c) The term 'automobile dealer' shall mean any person, partnership, corporation, association, or other form of business enterprise resident in the United States or in any Territory thereof or in the District of Columbia operating under the terms of a franchise and engaged in the sale or distribution of passenger cars, trucks, or station wagons."

6. 1956 U.S.Code and Adm.News, pp. 4596, 4601.

This is the only reference to what is now 15 U.S.C. § 1222.

■ This Court finds, in the absence of definition or limitation in the statute referred to that, insofar as the corporate defendant here is concerned the provisions of Title 28 U.S.C. § 1391(c) [7] define where defendant resides. If defendant was "doing business" within the Western District of South Carolina at the time of commencement of the action,[8] the motions would not prevail on the grounds of lack of residence.

The statute before the Court is similar to that found applicable to patents and copyrights.[9] In comparing that statute with 1391(c) the Seventh Circuit Court of Appeals held in Dalton v. Shakespeare Co., 196 F.2d 469, 472:

"If Congress had intended the definition of Section 1391(c) to be limited to certain types of actions, congress would, we think, have plainly said so. If, on the contrary, congress had intended to provide that corporations are, for venue purposes, residents of those districts in which they are doing business, regardless of the particular wrong with which the corporation may be charged, it,

by using the word 'residence' in Section 1391(c) and 'resides' in Section 1400(b), certainly took the right course to do so."

As is shown by the affidavits of H. W. Smith and James F. Sharkey, Jr., Mr. Sharkey is a citizen and resident of Charlotte, North Carolina and is neither an officer, director, or stockholder of the defendant corporation but is a salaried employee with the title of District Sales Manager, having primary duties of calling on the defendant's various dealers and obtaining orders for automobiles and rendering such advice to dealers as they may request. From March 21, 1964 until the present, however, the defendant has had no dealers in the Western District of South Carolina.

Assuming, arguendo, that James F. Sharkey, Jr., was an agent of the defendant as contemplated by Title 10, Sections 421 and 423 of the South Carolina Code of Laws for 1962,[10] the requirements of Rule 4(d) (7), Federal Rules of Civil Procedure, would have been satisfied; but as is stated in Arrowsmith v. United Press International, 320 F.2d 219, 224, this rule relates only to the *manner* of service and leaves open the question of

7. Which reads: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

8. See Beck v. Bailey, 31 F.R.D. 201 (D.C. S.C.1962).

9. Title 28 U.S.C. § 1400 which reads: "*Patents and copyrights*
"(a) Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found.
"(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

10. Which provide:
"§ 10–421. *How summons served on corporations generally.*—If the suit be

against a corporation, the summons shall, except as otherwise expressly provided, be served by delivering a copy thereof to the president or other head of the corporation, or to the secretary, cashier or treasurer or any director or agent thereof; *provided, further*, that, in the case of domestic corporations, service as effected under the terms of this section shall be effective and confer jurisdiction over any domestic corporation in any county where such domestic corporation shall own property and transact business, regardless of whether or not such domestic corporation maintains an office or has agents in that county."

"§ 10–423. *Same; qualification as to foreign corporations.*—Service can be made in respect to a foreign corporation under the provisions of § 10–421 only (a) when it has property within the State, (b) when the cause of action arose therein or (c) when such service shall be made in this State personally upon the president, cashier, treasurer, attorney, secretary or any other agent thereof."

whether the corporation is amenable to suit. As to this question the following principles are adopted here:

(a) Service upon an officer of the defendant corporation who is temporarily within a state is insufficient, Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 43 S.Ct. 312, 67 L.Ed. 596; Long v. Victor Products Corp., 297 F.2d 577, Brays Island Plantation v. Harper, S.C., 140 S.E.2d 781 (decided March 4, 1965);

(b) The question of whether a corporation is "doing business" or "is found" within a state must be determined as of the time the action was filed, Cf. Proler Steel Corp. v. Luria Bros. & Co., 225 F.Supp. 412.

As previously noted, James F. Sharkey is a resident of North Carolina and the defendant corporation had no dealers in the Western District of South Carolina on June 19, 1964 when Sharkey, whose duty was to call on dealerships, was served, nor has it had any dealers in the district from March 21, 1964 until and including date of service. The sole purpose of Sharkey's trip to Greenville, South Carolina was to meet with the plaintiff and inspect vehicles which the plaintiff ostensibly had for return to the defendant; but, as stated, upon his arrival he was served with the summons and complaint and he was then advised that the plaintiff did not wish to return any vehicles.

 Lumiere v. Mae Edna Wilder, Inc., supra, involved an action under the copyright Act which provided that suits " 'may be instituted in the district of which the defendant or his agent is an inhabitant, or in which he may be found.' " Lumiere was a citizen and resident of New York City in the southern district. The defendant corporation had its place of business in the western district and had no place of business in the southern district nor had it any agent or employee in the southern district authorized to carry on business in his behalf. Lumiere instituted action in the federal court for the southern district and service of process was made by de-livery to Mr. Adkin, President of the defendant corporation, a copy of the summons while he was temporarily in New York City. In holding that service was invalid in opinion written by Mr. Justice Brandeis, the Court said:

"That jurisdiction over a corporation cannot be acquired in a district in which it has no place of business and is not found, merely by serving process upon an executive officer temporarily therein, even if he is there on business of the company, has been settled."

Similarly, in the recent case of Long v. Victor Products Corp., (8th Cir.) 297 F.2d 577, the complaint was dismissed on the ground of lack of jurisdiction over the defendant in the eastern district of Missouri. In that case the plaintiffs were citizens of Missouri and the defendant was a Maryland corporation not formally authorized to do business in Missouri. Service of the summons and complaint was effected by the United States Marshal on the Chairman of the Board and the Vice President of the defendant corporation while they were in St. Louis, Missouri attending a convention at which the defendant corporation maintained a booth; and at the time the defendant had a salesman, whose title was District Sales Manager, who resided in Missouri and solicited orders therein. After noting the applicability of the principles prescribed by the Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the court went on to say:

"It is, of course, long settled that jurisdiction over a foreign corporation is not acquired merely by the service of process upon an executive officer temporarily present in the state or district even though he is there on corporation business. James-Dickinson Co. v. Harry, 1927, 273 U.S. 119, 122, 47 S.Ct. 308, 71 L.Ed. 569; Bank of America v. Whitney Bank, 1923, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594; Collar v. Peninsular Gas

Co., Mo.Sup., 1956, 295 S.W.2d 88, 90."

It may be argued that during the period in which the plaintiff was the defendant's dealer Snyder was, himself, the defendant's agent within the contemplation of Title 10 Sections 421 and 423 of the South Carolina Code of Laws for 1962, as amended. See Szantay, Adm'x. v. Beech Aircraft Corp., 237 F.Supp. 393 (E.D.S.C.1965) (decided January 19, 1965), and the cases cited therein, although such would, of course, not necessarily be the result as each case must stand on its own facts. Long v. Victor Products Corp., supra. Similarly, it might be argued that during the period in which the plaintiff was the defendant's dealer Sharkey, in soliciting orders from the plaintiff and rendering other services, was the defendant's agent for the purpose of service of process. But the plaintiff's dealership was terminated on March 21, 1964, some three months before this action was instituted, and at a time when the defendant had no dealers in the Western District of South Carolina with whom Sharkey could transact business. As stated by the court in Proler Steel Corp. v. Luria Bros. & Co., 225 F. Supp. 412, 413, "It is well settled that venue and jurisdiction are determined by the facts as they exist at the time the action is filed." Although the defendant may have resided, or might have been found, or had an agent in the Western District of South Carolina prior to March 21, 1964 such was not the situation on June 19, 1964; and if Congress, in enacting the Automobile Dealers Statute, had intended that action could be laid in the district wherein the dealership was situated it would have so stated rather than providing for suit "in the district in which said manufacturer resides, or is found, or has an agent." If action under the statute could be maintained in the district wherein the manufacturer or distributor had terminated a dealership agreement the plaintiff would have encountered no difficulty in Schnabel v. Volkswagen of America, Inc., (D.C.Iowa) 185 F.Supp. 122 (service quashed in action by Iowa dealer against New Jersey importer and Illinois distributor). And it is reasonable to assume that if the statute were so intended the plaintiff in Fiat Motor Co. v. Alabama Imported Cars, Inc., 292 F.2d 745, would have instituted action in Alabama rather than the District of Columbia.

See also Blount v. Peerless Chemicals (P.R.) Inc., Second Circuit 1963, 316 F. 2d 695, cert. denied, 375 U.S. 831, 84 S. Ct. 76, 11 L.Ed.2d 62, Long v. Victor Products Corp. (8th Cir. 1962) 297 F.2d 577; Powell v. Sealectro Inc., 205 F. Supp. 6. These cases hold the "presence" of defendant necessary to a finding of "doing business"; a presence not shown here.

■ It may be argued, admitting that neither residence nor agency can be the foundation for jurisdiction and suit here, was not Sharkey, as agent, "found" in Greenville by the process service? If so, the corporation is also "found" there. The authorities do not so hold.

Sharkey was temporarily in South Carolina, but on the business of the corporation. His visit was not part of a systematic and continuous activity [11] of such nature. He was not maintained by defendant as an agent in the district; [12] his temporary presence was insufficient for valid service of process. There is an insufficiency of facts to hold defendant "found" in the Western District of South Carolina. There is no waiver here.

The isolated incident of the visit of Sharkey to Greenville is insufficient to sustain plaintiff's effort to obtain jurisdiction by the service effected. Venue as to suits relative to copyrights is authorized by similar language. (Note 9, supra). In Cargill v. Mark's Credit Clothing Co. (D.C.N.Y.) 29 F.Supp. 725,

---

11. See Gauvreau v. Warner Bros. Pictures Inc., 178 F.Supp. 510.

12. Backer v. Gonder Ceramic Arts, 90 F.Supp. 737.

728, we find applicable reasoning. A single visit was ruled insufficient.

> "When a foreign corporation, engaged in business as a retailer in another district, places orders for the purchase of merchandise from wholesalers within this district, through a buyer who comes here at regular intervals for that purpose, or through so-called resident buyers, such as the Associated Budget Retailers of America, Inc., the foreign corporation is not, in my opinion, doing business within this district so as to be considered as 'found' here, within the meaning of Section 35."

To the same import is Gauvreau v. Warner Bros. Pictures Inc., supra. U. S. v. Watchmakers of Switzerland Information Center, 173 F.Supp. 40, 42.

Plaintiff has made no showing sufficient to warrant the protective covering of the statute under which he proceeds.

The motions should be granted.

In accordance with 28 U.S.C. § 1292 (b), the Court hereby certifies that it is of the opinion that the within order involves controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the within interlocutory order of the Court may materially advance the ultimate termination of the litigation; and that either party should have the opportunity to apply to the Court of Appeals for the Fourth Circuit for permission for an appeal to be taken from such order if either should so desire. Should such application for an appeal be made by either party and such permission be granted by the Court of Appeals, then further proceedings in this case shall be stayed until a determination of the appeal.

And it is so ordered.