**Paul D. BERK, Plaintiff,**

v.

**Joe BAILEY, Jr., and National Association for Stock Car Auto Racing, Inc., Defendants.**

**Civ. A. No. 4063.**

United States District Court
W. D. South Carolina,
Greenville Division.

Sept. 12, 1962.

6. See note in 13 Ark.Law Review 381. The question was presented but not reached in Haville v. Pearrow, Ark., 346 S.W.2d 204.

Schaefer B. Kendrick (Kendrick & Stephenson), Sidney L. Jay, Greenville, S. C., for plaintiff.

J. D. Todd, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S. C., for defendants.

WYCHE, Chief Judge.

This is an action to recover damages for personal injuries sustained by the plaintiff at the Greenville-Pickens Speedway by reason of the alleged negligence and recklessness of the defendants.

The plaintiff is a resident of the State of Connecticut; the defendant Joe Bailey, Jr. is a resident of Spartanburg County, South Carolina; the defendant National Association for Stock Car Auto Racing, Inc. is a foreign corporation with its principal place of business at Daytona Beach, Florida.

The action is before me upon the motion of the defendant National Association for Stock Car Auto Racing, Inc. (hereinafter called NASCAR) to set aside and quash the service upon the said defendant upon the grounds that such service is in violation of Rule 4(f) of the Federal Rules of Civil Procedure because the only service made upon this defendant was made by Jack F. Peeples, Deputy United States Marshal at Daytona Beach, Florida, on May 9, 1962; that such service is without the territorial limits of the State in which this action is sought to be commenced and beyond the territorial limits of the Western District of United States District Court for South Carolina; that such service is insufficient and void and this motion will be based upon the return of service of writ executed by the said Jack F. Peeples in this case and duly filed in the office of the Clerk of this Court on May 15, 1962.

Plaintiff contends that the defendant NASCAR was doing business in South Carolina, but had not complied with the domestication statute of South Carolina, Section 12–721, Code of Laws of South Carolina 1952.

The record shows that on May 9, 1962, a United States Deputy Marshal served a copy of the summons and complaint on the president of the defendant NASCAR at its principal place of business in Daytona Beach, Florida, and duly filed his return of service.

Section 10–424, Code of Laws of South Carolina 1952, is as follows: "Service on foreign corporations generally. If the suit be against a foreign corporation other than a foreign insurance company the summons and any other legal paper may be served by delivering a copy to any officer, agent or employee of the corporation found at the place within this State designated by the stipulation or declaration filed by the corporation pursuant to § 12–721. But if such foreign corporation transacts business in this State without complying with said section such service may be made by leaving a copy of the paper with a fee of one dollar in the hands of the Secretary of State or in his office and such service shall be deemed sufficient service and shall have like force and effect in all respects as service upon citizens of this State found within the limits of the same if notice of such service and a copy of the paper served are forthwith sent by registered mail by the plaintiff to the defendant foreign corporation and the defendant's return receipt and the plaintiff's affidavit of compliance therewith are filed in the cause and submitted to the court from which such process or other paper issued.

*"Such service may also* be made by delivery of a copy thereof to any such corporation outside the State and proof of such delivery may be made by the affidavit of the person delivering the same. Such affidavit shall be filed in the cause and submitted to the court from which the process or other paper issued." (Emphasis added.)

Rule 4(f), Rules of Civil Procedure, 28 U.S.C.A. is as follows: "Territorial Limits of Effective Service. All process other than a subpoena may be served any-where within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpoena may be served within the territorial limits provided in Rule 45."

The question presented is whether Rule 4(f), Rules of Civil Procedure, controls the validity of the service in this case.

In the case of Kappus v. Western Hills Oil, Inc., 24 F.R.D. 123, (E.D.Wis.1959), the defendant Western Hills Oil, Inc. was a foreign corporation with its principal place of business in Tulsa, Oklahoma; service was made by the United States Marshal on the corporation's Executive Vice President at its principal place of business in Tulsa, Oklahoma. On motion to dismiss the action for lack of jurisdiction under the provisions of Rule 4(f), the court said in that case: "The question is raised as to whether personal service without the State is consistent with the Federal Rules of Civil Procedure, 28 U.S.C.A.

"Rule 4(d) (7) states that it is '* * * sufficient if the summons and complaint are served * * * in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.'

"Section 262.09(4) of the Wisconsin Statutes provides: 'If the defendant is a foreign corporation * * * and * * * (b) the cause of action against it arose out of the doing of business in Wisconsin, service may be made * * * by delivering within or without the state a copy of the summons to any officer, director or managing agent of the corporation.'

"Rule 4(f) states: 'Territorial Limits of Effective Service. All process other than a subpoena may be served any-where within the territorial limits of the

state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpoena may be served within the territorial limits provided in Rule 45.'

"The question of whether Rule 4(f) prohibits federal service outside the State even though the State authorizes extraterritorial service appears to be one of first impression. The case of Giffin v. Ensign, 3 Cir., 1956, 234 F.2d 307, 311, holds that when a State court authorizes a procedure for service in nonresident motor vehicle cases, the Federal Court may serve process in the same manner, Rule 4(f) notwithstanding. The opinion of Chief Judge Biggs in the Giffin case cites in support of its holding the statement of Judge (then Dean) Charles E. Clark, a member of the Advisory Committee to the Supreme Court, with respect to Rule 4(d) (7) that: ' * * * and (7) is a kind of catchall, providing that in classes (1) and (3) above,—that is, those dealing with the individual or the corporation or association—any form of service which would be good in the State where the district court is sitting shall also be held good in the federal court.'

"It should be noted that the Giffin decision upholds notice to a nonresident defendant without resting on the distinction that service was made upon a local agent. 1 Barron and Holtzoff, Federal Practice and Procedure, § 184 (rules ed. Supp.1958).

"Professor Moore states: 'If (the) * * * element of personal service were deemed essential to due process, the question would arise whether, in a federal action, such service outside the state would conflict with Federal Rule 4(f) prescribing "territorial limits of effective service." It would seem not, because clause (f) evidently refers to ordinary original service, and was not intended to restrict the effectiveness of state substituted service when federal process is served in that manner.' 2 Moore, § 4.19, pages 948–949 (2nd ed. 1948).

"In the same vein, Rule 4(f) should not be interpreted to restrict the effectiveness of State authorized personal extraterritorial service when federal process is served in that manner. Therefore, the service is deemed sufficient as to Western."

In the case of Giffin v. Ensign, 234 F.2d 307 (C.A.3, 1956), the plaintiffs were citizens of Pennsylvania, while the defendants were Indiana residents, therefore, jurisdiction of the district court was based on diversity of citizenship. All defendants were served extraterritorially under the Pennsylvania nonresident motorist statute. The defendants Ensign and Burnett objected to the mode of service relying on the provisions of Rule 4(f). The Trial Court overruled the objection. In affirming the District Court the Court of Appeals of the Third Circuit said: " * * * we must determine whether the defendants Ensign and Burnett were properly before the district court. The method of service above was in accord with the Pennsylvania non-resident motorist statute. * * * F.R.C.P. 4(d) (7) authorizes service in the manner prescribed by State law. *However, Ensign and Burnett argue that Rule 4 (d) (7) is in turn limited by Rule 4(f), which restricts the service of process to the territorial limits of the State in which the district court sits.* In support of their position they cite language in the concurring opinion of Judge Maris in McCoy v. Siler, 3 Cir., 1953, 205 F. 2d 498, 501.

"The problem comes before us in the appeal at bar only as a question in the application of the Federal Rules of Civil Procedure relating to summons by substituted service. Though there are far reaching undertones in the principle enunciated by the concurring opinion in McCoy v. Siler it is not necessary to deal with them here. There is no dispute that Rule 4(d) (7), F.R.C.P., if read alone, authorizes the procedure followed

in the case at bar to bring the non-resident defendants before the court and to subject them to its jurisdiction. *The only question is whether a reasonable man must construe Rule 4(f) as so limiting 4(d) (7) that it cannot apply to the situation of these non-resident defendants.* Judge Maris's position in McCoy v. Siler is carefully reasoned and he insists that Rule 4(f) does limit Rule 4(d) (7) but we are now persuaded that such a limitation was not intended and is not logically inescapable. *We think that it can be said fairly that Rule 4(f) does not address itself to or cover non-resident procedures authorized by State law, which are the subject of Rule 4(d) (7).* That conclusion, and no more, is needed to decide this case. The service was lawful." (Emphasis added.)

In the case of Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, S. A., 243 F.2d 342 (C.A.2, 1957) disposing of the same question, the Court of Appeals of the Second Circuit, said: "A further argument against the conclusion that Rule 4(d) (7) incorporates the state method of service is based on Rule 4(f). *In our opinion the territorial limitation of Rule 4(f) relates to the service of federal process and does not limit the use of state process authorized by Rule 4(d) (7).* Such was the holding in Giffin v. Ensign, 3 Cir., 234 F.2d 307, 311.

"The amendment to section 4 by incorporating Rule 4(d) (7) permits use of the state method of serving process to compel specific performance of an arbitration agreement. New York cases hold that service by mail outside the state is sufficient if permitted by the law of the state where the arbitration was agreed to be had. The notice mailed to the appellant's office in Florida was adequate to enable it to make defense to the petition. Hence it satisfied the requirements of due process. For the reasons above stated we hold that the court acquired jurisdiction *in personam* over the appellant." (Emphasis added.)

For the foregoing reasons I must conclude that Rule 4(f) is not controlling of the question and that under Rule 4(d) (7) the extraterritorial state authorized service in this case was proper.

But the defendant NASCAR says that Section 10–424, Code of Laws of South Carolina 1952, has application only to foreign corporations doing business in South Carolina, and that the defendant NASCAR was not doing business in South Carolina.

The affidavits submitted by plaintiff in this case disclose that NASCAR has agents and officials within the Western District of South Carolina for the transaction of its business; that the charter of the corporation states the business of the corporation to be, among other things, the engaging in, sanctioning, supervising, promoting, holding or arranging, of automobile races within and without the State of Florida, and in any part of the world; that in Daytona Beach, Florida, a large, full-time staff sets up specifications, assigns officials to NASCAR events, keeps records of NASCAR drivers and owners, supervises payment of purses by bonded NASCAR stewards immediately after each race is run, and administers a benefit plan, written through a nationally-known insurance company; many of the officials of NASCAR reside in the State of South Carolina, several of such officials residing in the counties of Greenville and Spartanburg; that NASCAR is in the business of sanctioning auto races for which this organization charges a pre-determined fee, depending upon the size and type of track, type of contest, and size of purse; that in so sanctioning a race, NASCAR takes charge of and has the exclusive and final say as to the running of the contest; that employees of NASCAR, paid by NASCAR, usually the Chief Steward, in order to insure to the drivers and/or owners of the cars their purse, collects and disburses the prize money at the

track, and, in addition, collects certain fees and forwards same to NASCAR headquarters; that one of the largest sporting events in the State of South Carolina, is a race held annually at the Darlington International Raceway; this race, known as the "Southern 500" is a NASCAR sanctioned event, run under the rules and regulations of NASCAR and by officiating employees of NAS-CAR; that located within the counties of Pickens and Spartanburg are race tracks with NASCAR inspection and approval and upon which races sanctioned by NASCAR have been recently run; such races have been and are advertised as being NASCAR sanctioned, and paid employees of NASCAR have been present at such races, carrying out the duties of NASCAR in sanctioning and conducting such event; that if a track owner or promoter wishes to sponsor a NASCAR sanctioned race, he makes application to NASCAR headquarters at Daytona Beach, Florida; that acting upon this application, NASCAR among other things will charge a sanctioning fee to be paid by the promoter; approve date, distance, starting time, and purse for the particular race; send an official who is an employee of NASCAR to inspect the track and surrounding area for safety conditions affecting both participants and spectators; it will sanction such race only if all of NASCAR conditions and requirements are met; when sanctioned, the promoter is required to operate the race strictly under NASCAR's rules, regulations and specifications; the running of sanctioned races is completely under the direction and supervision of officials who are employees of NASCAR; the number and class of such officials sent for the purpose of supervising a given race is dependent upon the type and size of the track, the length of the race and the amount of the purse; the ranking NASCAR official at a sanctioned race is commonly referred to as the Chief Steward, who has complete authority to postpone or call off the race in his discretion; that the Chief Steward has the authority to demand and obtain from the promoter the purse money for payment to the winning drivers; the Chief Steward also has authority to demand and obtain from the promoter such fees charged the promoter by NASCAR for that race, including the fees charged the promoter by NASCAR for the officials assigned to the race; that any such fees so collected by the Chief Steward are sent by him to NASCAR headquarters; that the NASCAR officials generally sent to conduct a race in the Grand National Championship Division are flagman, timer, scorers and an inspector or technical director, all of whom are employed by NASCAR; NASCAR sanctioned races have been and are currently held at the Greenville-Pickens Speedway and NASCAR employees officiated, supervised and conducted such sanctioned races in the manner hereinabove set forth.

The Supreme Court said in the case of International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95: " * * * to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

"There is no precise test as to the corporate activities which will bring a corporation within the jurisdiction of the court and amenable to its process. Each case is determined according to its own facts." Shealy v. Challenger Mfg. Co., D.C., 198 F.Supp. 151, affirmed 4 Cir., 304 F.2d 102 (1962).

 It is my opinion that the operations of NASCAR in the State of South Carolina establish sufficient contacts or

ties with the State of South Carolina, to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which the defendant NASCAR has incurred there and to make the defendant NASCAR subject to substituted service of process under South Carolina statute.

The case is also before me on the motion of the defendants to dismiss the action on the ground that it cannot be properly instituted and maintained in the Western District of South Carolina, because the defendant National Association for Stock Car Auto Racing, Inc. is neither incorporated, licensed to do business nor doing business in the Western District of South Carolina within the meaning of 28 U.S.C.A. § 1391(c) and that the defendant National Association for Stock Car Auto Racing, Inc. has not, expressly or impliedly, consented to be sued in this District.

28 U.S.C.A. § 1391(c) provides: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business *or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.*" (Emphasis added.)

 Having concluded that the defendant National Association for Stock Car Auto Racing, Inc. is doing business in South Carolina, and that it has been properly served with process, the motion to dismiss the action on the ground of improper venue should be denied.

It Is, Therefore, Ordered, That the motion of the defendant National Association for Stock Car Auto Racing, Inc. to set aside and quash the service upon said defendant and dismiss the summons and complaint in the above entitled action, be and the same is hereby denied.

It Is Further Ordered, That the motion of the defendants to dismiss this action on the ground of improper venue be and the same is hereby denied.